TEXAS & P. RY. CO. v. PUTMAN.

(Circuit Court of Appeals, Fifth Circuit. February 24, 1903.)

No. 1,166.

1. RAILROADS—NEGLIGENCE—BRAKEMAN—PERSONAL INJURIES.

In an action by a brakeman for injuries alleged to have been caused by the engineer's negligent application of the air brakes, resulting in his being thrown from the engine, the evidence considered, and *held* to make a question for the jury as to the engineer's negligence.

2. SERVANTS—NEGLIGENCE OF FELLOW SERVANTS—ASSUMPTION OF RISK.

Under the statutes of Texas a servant of a railway company does not assume the risk of injury through the negligence of his fellow servants.

3. SAME—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.

In an action by a brakeman for injuries alleged to have been caused by the engineer's negligence in suddenly applying the air while plaintiff was on the pilot of the engine preparatory to getting off to run ahead and open a switch, plaintiff testified that he was not told to go on the pilot, and there was no rule either requiring or forbidding it, but that it was necessary in order to reach the switch in time to open it ahead of the engine. *Held* not to show contributory negligence, so as to relieve defendant of the burden of proving it.

4. SAME—INSTRUCTIONS—DISCOVERED PERIL.

In an action by a brakeman for injuries alleged to have been caused by the engineer's negligence in suddenly applying the air while plaintiff was on the pilot of the engine, so as to throw him off in front of the engine, defendant alleged that plaintiff's position on the engine was one of danger, and that he was guilty of contributory negligence in being there. There was evidence that the engineer knew of plaintiff's position. *Held*, that a charge on the doctrine of discovered peril was justified.

In Error to the Circuit Court of the United States for the Northern District of Texas.

In this case the plaintiff, Mark Putman, for cause of action alleges: That on the 29th day of December, 1899, he was in the employment of the Texas & Pacific Railway Company as a brakeman on a freight train. That it was his duty, on the approach of the train to a station where the train was to go on a side track, to leap from the train as soon as it slacks or stops, and open the switch, so as to enable the train to enter the side track. That in performing this duty it is required of him, and customary for him, as soon as the train nears the switch, to be in position to immediately jump from the train. To do this it is expected of him to descend from the cowcatcher. That handholds are placed on the sides of freight cars, with running boards along the boiler of engines, and handholds. Owing to the presence of a bridge at or near Benbrook, the switch is at the east end of the siding. That, as the switch is only 100 feet west of a bridge, it was customary for the engineer to stop just west of the bridge to permit the brakeman to go ahead and open the switch. Plaintiff was at the time head brakeman. The conductor

¶ 2. Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.

and engineer, on leaving Ft. Worth, were given a time order for Benbrook to get there ahead of the east-bound passenger train. The train was run at nearly one mile per minute, and it was necessary to make a quick stop for the switch. Plaintiff passed out of the cab window along the engine to and upon the drawhead in front of the engine, waiting for it to slack the speed that he might leap off, run ahead, and open the switch. While he was holding to an iron rod upon the engine, suddenly, and without warning, and without necessity for so doing, one or more of the employés of the defendant engaged in the work of operating the locomotive or cars which constituted the train on which plaintiff was working negligently, by applying the brakes upon the locomotive, or the cars, or both, or by some other means unknown to petitioner, stopped the train in such a violent and sudden manner as to break the hold of plaintiff upon the iron rod, and to hurl him in front of the engine. He fell under the engine. His leg was crushed, and had to be amputated, injuring him, etc. Plaintiff sues for $25,000. Was, when hurt, 19 years old. The defendant, the Texas & Pacific Railway Company, for answer plead, first, a general demurrer; second, general denial, and that Putman was not required, as a brakeman, to go out on the running board on the engine to get on the ground, and it was not necessary for him to do so in the proper performance of his duty as a brakeman, and that the plaintiff was guilty of contributory negligence in getting off the engine as he did. After all of the evidence had been heard, the defendant requested the court to charge the jury to return a verdict for the defendant, which was refused. The case is here on a writ of error.

T. J. Freeman and B. G. Bidwell, for plaintiff in error.
C. K. Bell, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge, after stating the case, delivered the opinion of the court.

In this case four errors are assigned, only two of which were pressed in the oral argument. One of these is to the effect that the court erred in refusing to give the jury the first special charge requested by the defendant, which charge requested the court to instruct the jury to find for the defendant. The theory upon which this assignment is based is that there is no proof in the record of negligence of the defendant, and because the plaintiff, as a matter of law, assumed the risk of the danger by which he claims to have been hurt. One effect of the refusal to give this requested charge has been to bring up for our review the full statement of the evidence admitted on the trial and the whole of the court's charge to the jury; all of which are embraced in the one bill of exceptions reserved and allowed, on which the error just stated is assigned, and on which is also assigned the other error alluded to as having been pressed in the oral argument, to the effect that the court erred in charging the jury the law applicable to the doctrine of discovered peril, which the plaintiff in error contends does not apply in this case. The theory upon which this assignment is based is that the undisputed evidence is (so plaintiff in error contends) that the engineer was the exclusive judge of the necessity for applying the air in emergency, and it would be his duty to do so whenever he thought proper, without reference to where the plaintiff was on the train.

The material parts of the judge's charge are substantially as follows:

"Upon the issue of negligence of the defendant the burden is upon the plaintiff, and to entitle him to recover it must be shown to you by a prepon-

derance or greater weight of the evidence that the plaintiff received his injuries substantially as alleged, and that his injuries were caused by reason of the negligence of the defendant company.

"The burden of proving that the plaintiff was guilty of contributory negligence rests upon the defendant, and, unless the defendant has shown to you by a preponderance or greater weight of the evidence that the plaintiff was guilty of negligence which contributed to his injuries, the defendant would fail in its plea of contributory negligence.

"Negligence, in a general sense, is an omission to perform a duty imposed by law for the protection of one's own person or property or that of another.

"Contributory negligence is negligence not only upon the part of the one committing the injury, but also upon the part of him upon whom the injury is committed, and by which they both contribute thereto.

"Ordinary care is such care as an ordinary prudent person would exercise under similar circumstances. More than this the law does not require; less than this is negligence.

"One who enters the employ of a railroad company as brakeman takes upon himself those risks which are usually incident to that employment. By his acceptance of the dangerous and hazardous service, he assumes the risk of any connected therewith, except the negligence of his employer or his fellow employés; and he cannot recover for injuries caused by reason of the performance of his duties unless the same were caused by the negligence of his employer or his fellow servants. If the plaintiff, so engaged as brakeman in the service of the defendant railway company, and in the customary discharge of his duties, went out on the front end of the locomotive, or cowcatcher, for the purpose of enabling him to jump from that position to the ground and run forward and throw the switch in order that the train might enter upon the side track, he assumed all the risk ordinarily incident to that service and incident to the performance of such service in the manner in which he performed it. And if he met with an accident in the performance of same he cannot recover, unless it was caused by the negligence of his fellow servants engaged in the operation of the train, and without any contributory negligence on his part.

"On the other hand, he does not assume the dangers and risks arising from the negligent manner of operating trains, and in the discharge of his duties as brakeman he has the right to assume that his fellow servants will exercise ordinary care in the operation of trains.

"If you believe from the evidence that the plaintiff did go out upon the front end of the engine, and take a position on the drawhead that extends over and above the pilot for the purpose of enabling him to more speedily open the switch, and if you believe that in so doing he failed to exercise ordinary care for his own safety, and was thereby guilty of negligence, then, and in that event, he cannot recover in this action.

"But you are further charged that negligence on the part of plaintiff will not always exempt the defendant from liability. In the operations of trains it is a rule of law that, if a person negligently exposes himself to a risk of injury, it is the duty of those operating the train, after becoming aware of his danger, to use ordinary care for the purpose of avoiding injury. Therefore, if you believe from the evidence that Mark Putman, in attempting to discharge his duty, negligently took a dangerous position on the front end of the engine while same was in motion, and thereby exposed himself to risk of injury; and if you believe the engineer operating said engine, knowing of his dangerous position, negligently stopped or slackened the speed of his engine so suddenly as to cause the plaintiff to be thrown therefrom and injured; and if you believe that his injury was proximately caused by the engineer negligently stopping or slackening the speed of said engine; and if you further believe that at the time of the accident, in his position on the drawhead over the pilot of said engine, plaintiff was exercising that degree of care and caution that a reasonably prudent man would have exercised under like circumstances—then you are charged that plaintiff would be entitled to recover, even though you believe it was negligence, in the first instance, for plaintiff to take his position on the front end of the engine.

"Again, if you believe that Mark Putman, in attempting to discharge his duties to the defendant as brakeman, went to the front end of the engine and took his position on the cowcatcher while the train was in motion, and if you believe that in so doing he acted as a reasonably prudent brakeman would have acted under similar circumstances in the discharge of his duties, and if, while in that position, he was acting with due care and caution to guard against injury; and if you further believe that the engineer operating said engine knew of the position of plaintiff, and unnecessarily stopped or slackened the speed of the engine by the use of his air in emergency, as it is termed; and if you believe such action on his part constituted negligence, as herein defined—then plaintiff would be entitled to recover for any damages he may have sustained in consequence thereof.

"On the other hand, if you believe from the evidence that plaintiff was thrown from said engine, or fell therefrom, before the brakes on said engine and cars were set by the engineer, then, and in that event, you will find a verdict for the defendant. Or if you believe from the evidence that the setting of the brakes on the engine and cars, if you find they were so set before plaintiff fell from said engine, were not set violently, and so as to cause plaintiff to lose his hold, then, and in that event, you will find for the defendant."

To which charge of the court the defendant below excepted, because the court refused the first special charge asked by the defendant; because there is no proof of the negligence of the defendant, and because the plaintiff assumed the risk of the danger by which he claims to have been hurt; and because the plaintiff is guilty of contributory negligence in going on the pilot of the engine at the time and under the circumstances in which he did. Further, the defendant excepted to that part of the charge of the court in which the jury was told that the burden of proving contributory negligence is on the defendant, because there is no proof of what the plaintiff did but his own evidence, and the law is that, where plaintiff discloses the fact that he is guilty of contributory negligence, it is not correct to charge that the burden is on the defendant, because it has already been shown by the plaintiff. The defendant further excepted to that part of the charge which applies the doctrine of discovered peril, because it does not apply to this kind of a case, for the reason that the evidence (the defendant contends) shows that the engineer was the exclusive judge of the necessity of applying the air in emergency, and it would be his duty to do so when he thought it proper, without reference to where the plaintiff was on the train. The defendant contended further that there is no evidence that the engineer knew that the plaintiff was on the pilot of the engine; that there is no such issue raised in the pleadings; that the plaintiff does not complain of this as an act of negligence, and should be confined to the negligence pleaded by him.

Taking these grounds of exception to the charge seriatim and successively, we note, as to the proof of the negligence of the defendant, that the plaintiff, testifying on the stand, said, in substance, that he was sitting on the drawhead, with his feet on the south side (the train was running west on a track due east and west); that there was a brake rod running down beside him, and that he had hold of that with his left hand, and that he had his right hand on the knuckle of the drawhead; that immediately before he fell the train was running about 15 or 20 miles an hour; that at the instant before he fell

they stopped the train suddenly; the speed was checked so quick that it tore his hold loose, and caused him to be thrown right in front of the engine; that the train was stopped just as suddenly as it could be; that in stopping it jerked him right down over the pilot; that he had not been sitting there more than a minute or two— just a short time; that he knows how engines are stopped, having worked on an engine; that they stop an engine with air brakes; that the train from which he fell had air brakes; that a train can be stopped easy—that is, gradually—with the use of air brakes, or, in emergency, air brakes can be used, so that the brakes will clamp the wheels on each side, exert a very strong force, and stop the train just as suddenly as it can be stopped; that the train in question, and at the time in question, was stopped so suddenly it threw him right forward; that he had been on engines, and had seen the emergency air applied, and did not think anything else could have stopped it so suddenly; on a passenger train, on approaching a station, the engineer applies the air gradually, stopping gradually; instead of throwing the lever around, he turns it easy; there is a rule about applying the emergency brakes; it is when there is danger—if a bridge is on fire, or the train is about to strike a wagon crossing the road with people in it, or in like cases of extreme danger; that he did not see any reason for the application of the air in emergency; that he saw no reason why the engineer should do it, unless he was afraid he would run by the switch; that, if he had run by the switch, he would have to run back, he would have to back up; he would have to back further down the track in order to get a start.

It seems clear to us that this testimony, taken in connection with all the plaintiff said as a witness under examination before the jury, tended to prove that the engineer unnecessarily, without reasonable cause, or any cause that would justify such use of the air brakes, did, by their use, bring this train to a sudden stop, when it was running at the rate of 15 or 20 miles an hour, and that this directly caused the injury which the plaintiff received.

As to the second ground of exception—that the plaintiff had assumed the risk of the danger by which he claims to have been hurt— according to the rules of the common law still in force in many of the states, the plaintiff would have been held to have assumed the risk of the negligence of his fellow employés; but that has been changed by statute in Texas.

As to the ground that the plaintiff was guilty of contributory negligence in getting on the pilot of the engine at the time and under the circumstances in which he did, the plaintiff, on cross-examination, testified:

"It was necessary for me to go out there that way in order to make the time we were supposed to make. The reason I did not get off the end of the pilot beam, there is a flagstaff on each end of the pilot beam; and then it is too high to jump off of. The drawhead, I think, runs into the pilot beam. It is not much higher than the drawhead, but from the drawhead you slide down on a piece of iron or step, and then down only about 8 inches to the ground; that is where you get to before you get off. I do not know that that is more dangerous than other places. There was a flagstaff on that engine that morning. I had my lamp in my right hand, over the outside of the knuckle. I walked from the running board to the pilot beam. I stepped

from the running board to the steam chest, and from the steam chest to the pilot beam, and then went in front of the engine and sat down on the draw-head. I could have gotten off the engine steps where the engineer and fire-man get on and off, but I could not have opened the switch before he got there. I couldn't run that fast. I couldn't tell how fast he was going to run, and I would be behind, and would have to go ahead to open the switch. There was no rule of the company requiring me to get off on that pilot. It was voluntary whether I did or not. I acted on my own judgment and dis-cretion. There was no order to do it."

On redirect examination he said:

"I state that I went out on that front end of the engine voluntarily. It is the duty of a brakeman to do his work as rapidly as possible. You are sup-posed to do it as quick as you can. If he don't, he will get what railroad men call 'turned in.' The conductor will turn him in. If I had gotten off the side of the engine, I would have had to overtake the engine after it crossed the bridge, and then throw the switch before it got there. There is no rule prohibiting brakemen from getting out on the front of the engine."

We do not think that this proof, made by the plaintiff's own testi-mony, shows, as a matter of law, contributory negligence on his part, or to such a degree tends to show contributory negligence as a matter of fact as to relieve the defendant from the general rule that the bur-den of showing contributory negligence is on the defendant.

As to the exception that the case is one to which the doctrine of discovered peril has no application, based upon the suggestion that the engineer was the exclusive judge of the necessity of applying the air in emergency, and the further suggestion that there is no evi-dence that the engineer knew that the plaintiff was on the pilot of the engine, the witness Cain, who was the engineer, testifies:

"I saw the plaintiff when he got out of the cab window. I knew he was out there on the front end. From the time he went out the cab window until he fell, I don't see how he could have had time to get out on the pilot and sit down. I didn't know he was on the pilot, sitting down. I have heard that he claimed he was there. I knew he got out. I didn't know he was sit-ting down out there. I couldn't see him from my side."

The fireman testifies that a short time before the train came to a stop the plaintiff, Mark Putman, went out on the engine; that he got out of the cab through the fireman's window. "He went out on the running board, and I got down on the deck. I didn't know what he was going down there for. I didn't know he was going out there in order to get off and throw the switch. Sometimes they go out there for that purpose. Sometimes they go out there, and sit down on the front end. I don't know what they do it for. If they were going to head in there, I would suppose he was going out there for that. I knew we were going to head in there. Of course, it was generally supposed that he was going out there to get off and throw the switch. I didn't know at the time. I supposed it was for that. I saw him go out there on the running board, and I got down on the deck. I didn't know he was sitting down on the pilot."

. Many witnesses were examined for the defendant; some, whose testimony tended to show that the engineer did not apply the air in emergency until after or just as it was discovered that the plaintiff had fallen off the engine. Some of the testimony also tended to show that with the train going at the rate of 15 or 20 miles an hour the

most sudden stop of the engine that could be brought about by the use of the emergency air would not cause one to be projected forward from the engine. There is also rebutting proof on this point. It appears that the defendant on the trial earnestly contended that the plaintiff was negligent in getting out on the engine under the circumstances, and that this negligence on his part contributed directly to the injury which he received. It was to meet this contention that the judge instructed the jury as to the doctrine of discovered peril. We conclude that on the issue of negligence charged against the defendant there was some proof, and a conflict in the testimony, which required the case to be submitted to the jury in the absence of such a clear showing of contributory negligence on the plaintiff's part as would defeat his recovery. We think that such a clear case was not shown, and that, therefore, the first of the two grounds of error to which we have confined our consideration was not well taken. And, there being an issue of fact as to the contributory negligence pleaded and attempted to be proved, and there being also proof tending to show that the engineer did know substantially the position of the plaintiff, and the perilous character thereof, it was a case which called for proper instruction applying the doctrine of discovered peril. The exception goes no further than to object to its being applied at all, and does not question the correctness of the judge's charge as a statement of that doctrine to be observed by the jury, and to aid them in the solution of the issues presented to them.

It follows that the Circuit Court did not err in its action to which these exceptions are levied, and the judgment is therefore affirmed.