the value of the plans which he had prepared for the whole building; the court remarking that an architect cannot have a lien for making plans alone, but, when he makes the plans and supervises the construction, "it is the part that the architect takes during the construction that draws his services within the lien law." In Thompson-Starrett Co. v. Brooklyn Heights Realty Co., 111 App. Div. 358, 98 N. Y. Supp. 128, the plaintiff was denied a lien for preparing plans because no building was erected. In the present case the plaintiff not only drew plans, but superintended the construction, as was found by the City Court, and virtually affirmed by the Appellate Term, which allowed a recovery for the value of his services for supervision.

[2] There is no force in the suggestion that plaintiff should have filed a separate lien on each building. Woolf v. Schaefer, 103 App. Div. 567, 93 N. Y. Supp. 184.

The determination of the Appellate Term must be reversed, and the judgment of the City Court affirmed, with costs to appellant in this court and at the Appellate Term. All concur.

---

### BURTNETT v. ERIE R. CO.

(Supreme Court, Appellate Division, First Department. December 31, 1913.)

1. COMMERCE (§ 8*)—ACTION FOR INJURIES—EMPLOYERS' LIABILITY ACT—AP-
PLICATION OF STATUTE.

Where a brakeman, when he was injured by the alleged sudden jerking of the train, was engaged in interstate commerce, a railroad company's liability for such injuries should be determined under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]), and the company can insist that it be so determined.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 5; Dec. Dig. § 8.*]

2. MASTER AND SERVANT (§ 278*)—ACTIONS FOR INJURIES—SUFFICIENCY OF
EVIDENCE—NEGLIGENCE.

Evidence, in a freight brakeman's action for personal injuries by being jarred from the top of a freight car, *held* not to sustain a finding of negligence by the engineer in suddenly and violently jerking the train.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

Appeal from Trial Term, New York County.

Action by Torrence M. Burtnett against the Erie Railroad Company. From a judgment for plaintiff and an order denying defendant's motion for a new trial, defendant appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

William C. Cannon, of New York City, for appellant.
Thomas J. O'Neill, of New York City, for respondent.

SCOTT, J. The plaintiff was a brakeman in the employ of defendant and had been so employed for several years. He was injured on

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the night of January 6, 1910, by falling from the top of a freight car. During his employment on the railroad for nearly 20 years, plaintiff had become thoroughly familiar with the operation of freight trains and of the jolts and jars incident thereto. The train upon which plaintiff was working when he was injured was a fast freight which left Port Jervis at about 7:30 o'clock p. m., going west. Before it reached a station known as Basket Bridge, it was discovered that one of the cars, the eighth or ninth from the engine, had developed what is known as a "hot box," which necessitated its being cut out and left on a siding. To effect this, the disabled car was uncoupled from those behind it, which were left standing upon the track. The disabled car was backed onto a siding and left there. The engine and the cars which had been between it and the disabled one were then backed down upon the main track with a view to coupling onto the cars that had been left standing upon the track, thus reconstructing a solid train with the disabled car cut out. This process involved several distinct movements of backing, stopping, and going ahead again. During these movements plaintiff stood on the top of the cars, moving back and forth on the running board, and transmitting to the engineer the signals given to him by a flagman who stood on the ground. All of these movements were safely completed except the recoupling of the forward section to the rear section. The accident occurred as the front section was backing up slowly at a speed of not more than four or five miles an hour, or, as plaintiff expressed it, "safely and slowly." It had been sleeting and snowing all night, and the ground was covered with a glaze of ice; the roofs of the cars being wet and slushy. As the forward section was thus backing, the switchman gave a signal to stop, and the engineer stopped so suddenly that plaintiff was thrown, as he testifies, eight or ten feet towards the engine, or in a direction opposite to that in which the car on which he stood had been moving when it stopped. He fell to the ground and was severely injured. The negligence of which he complains is that the engineer stopped the train too suddenly, with a violent jerk. The only evidence as to the severity of the jolt, besides the fact that plaintiff was thrown, is his own estimate that "the jar was three or four times as severe as on other occasions."

The amended complaint contains four causes of action, plaintiff seeking to hold defendant under chapter 600 of the Laws of 1902 of this state, known as the Employers' Liability Act; and under chapter 657 of the Laws of 1906 of this state, and under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]), relating to injuries received by employés engaged in interstate commerce.

[1] At the commencement of the trial and again at the close of the plaintiff's case, the defendant moved that all of the causes of action, except that under the federal Employers' Liability Act, be dismissed. The motion was denied, and the case was submitted to the jury under a charge that permitted them to find a verdict under either of the state statutes or under the federal act. This was clearly erroneous. It is alleged in the complaint and is conceded on all hands that, at the time

he was injured, plaintiff was engaged in interstate commerce, and consequently the liability of the defendant is to be determined by the federal act, which is paramount and exclusive. Michigan Central R. R. Co. v. Vreeland, 227 U. S. 59, 33 Sup. Ct. 192, 57 L. Ed. 417. The rules of liability under the federal act differ in important particulars from the rules under the state act. In some respects they are more favorable to injured employés and in some respects less so. In any case the defendant was entitled to have the trial conducted and its liability determined by the only statute which was applicable.

[2] We are further of the opinion that a finding that the accident was the result of negligence or incapacity on the part of the engineer was against the evidence. The plaintiff's characterization of the jolt resulting from the stoppage of the train as "three or four times as severe as on other occasions" is not sufficient to justify a finding that the engineer was guilty of negligence. Furthermore, the plaintiff's account of the accident is incredible, because contrary to well-known natural laws. If the train had been suddenly stopped, the tendency would have been to throw plaintiff in the direction in which the train was moving when it was stopped. He says that he was thrown violently in an opposite direction. On the argument it was ingeniously suggested that the result of a sudden stoppage would be to establish a court of reflex action which might have thrown plaintiff towards the engine. There is no evidence that there was or necessarily would be any such action, and, if there had been, it could scarcely have been so severe as to throw plaintiff eight or ten feet, as he says he was thrown.

The judgment and order appealed from must be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.