C. U. HUNT, Appellee, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

NEGLIGENCE: Evidence—Res Ipsa Loquitur—Applicability—Jerk
1 of Train. The applicability of the doctrine of *res ipsa loquitur* depends not on the mere *fact* that an accident happened, but upon the *nature* of the accident—upon the circumstances attending an accident. No presumption of negligence is deducible from the mere fact that the caboose of a freight train gave a sudden and severe "jerk" just preceding a stop.

MASTER AND SERVANT: Actions—Presumptions—Res Ipsa
2 Loquitur. The doctrine of *res ipsa loquitur* may have application to an injury to a servant. The controlling fact is not the *relation* which exists between the parties, but the *nature* of the occurrence.

MASTER AND SERVANT: Actions—Negligence—Sudden Jerk of
3 Train. No jury question is presented on the issue of defendant's negligence by the mere fact that the conductor of a freight train, while in a place of safety, was injured by a sudden and severe jerk of the train.

*Appeal from Page District Court.*—A. B. THORNELL, Judge.

NOVEMBER 21, 1917.

ACTION for damages for personal injuries. At the close of the evidence there was a directed verdict for the defendant, on the ground of failure of proof of negligence. Later, plaintiff's motion for new trial was sustained. From such order the defendant has appealed.—*Reversed.*

*Scott & Peters, Palmer Trimbel,* and *M. J. Roberts,* for appellant.

*Earl R. Ferguson* and *C. R. Barnes,* for appellee.

1. NEGLIGENCE:
evidence: *res
ipsa loquitur*:
applicability:
jerk of train.

EVANS, J.—The plaintiff, at the time of the injury complained of, was a conductor for the defendant railroad company. His run was between Centerville and Keokuk,

Iowa, the railroad, however, passing through a portion of the state of Missouri. The plaintiff received his injuries on July 19, 1913, near the town of Memphis, Missouri. His claim is that, while engaged in the line of his duty on a westbound freight train, and while standing in the caboose thereof, there was a sudden jerk of the train, which threw him to the floor, whereby he 'sustained the injuries complained of. His averment is, in substance, that the jerk of the train was unusual in degree and that it was reckless and negligent. The petition avers that the place of the accident was about one mile west of Memphis. It appears also from evidence that the water tank was one mile west of such town; that there is a down grade for the greater part of the distance from the town to the water tank; that the train in question made its usual stop at the water tank.

As to the alleged accident, the plaintiff testified as follows:

"I remember some sort of an accident happened down the line there after we left Memphis, something like a mile. We were going down hill. I could not say whether we were just rounding the curve at that time or not. The train I was on usually takes water down there. We had got to the water tank. The train had attained a speed of something like 20 to 25 miles per hour. I was setting out cars on the wheel report and entering other cars that were picked up. I had not finished that work yet. I was standing up, with the train book in one hand, and setting them out just as I would do on any other trip. I had book and pencil in my hand. * * * I was there booking those cars and filling out the cars, and all at once there was an awful shock that threw me,—what I hit against I could not say,—and that is the last I remember until I came to at home. I have been in the railroad service for about seven years, as brakeman and conductor,—all in the freight service; always working for the C. B. & Q. * * * A.

One of the most violent shocks I ever received in my working capacity while on the road. * * * A. This was the most violent shock I ever received. I was thrown to the floor towards the engine. I do not remember anything at all until after I was thrown until along that night. Q. Now, basing your answer and opinion and your own experience of seven years in the freight service,—were you then so familiar with the division between Centerville and Keokuk at that time? A. Yes. Q. What might have caused this shock, if you say that you know? A. It might have been caused by the engineer shutting off the throttle with the spring behind the draw-bar, which, when shut off, would force the front end to stop and run the rear end all together with a terrific shock. It may have been caused by his allowing his air to go into emergency all at once. There wasn't any warning given me that I know of at the sudden jerking of the train, or stopping of it. * * * I do not know of any reason or necessity for train being stopped that suddenly. * * * It is about a mile from the Memphis station to the water tank. I was away from this station when I felt the shock, in the neighborhood of a mile. The engine was supposed to stop there for water, and I knew that. They don't whistle for the water tank. I have traveled over the road a great many times as freight conductor."

There was no other affirmative testimony pertaining to the accident than the foregoing. That is to say, though other members of the train crew testified on the subject, they all denied that there was any such accident, and denied that the plaintiff's injuries were caused in the manner described by him. This conflict of the evidence does not concern us on this appeal, except that it confines the plaintiff's proof to the very narrow ground covered by his own evidence as a witness, without the aid of any additional facts established by other witnesses. The order ap-

pealed from was one granting a new trial. Both parties, however, have planted themselves squarely upon the queston of the merit of plaintiff's case, and of the propriety of the first ruling of the court in directing a verdict for the defendant. The case appears to be one wherein we ought to meet the discussion upon the merits, rather than to deal with the question of discretion in the granting of a new trial.

2. MASTER AND SERVANT: actions: presumptions: *res ipsa loquitur.*

That the plaintiff in some manner suffered serious injuries is undisputed. That, for the purpose of this appeal, he must be deemed to have suffered the same in the manner described by him is also clear. The decisive question is, Was the evidence of the plaintiff sufficient to sustain a finding of negligence against the defendant, if such verdict were rendered? The plaintiff invokes the doctrine of *res ipsa loquitur,* and contends that the fact of the accident, coupled with evidence that there was no obstruction upon the track, makes a prima-facie case of negligence. The defendant denies that this doctrine is controlling of or applicable to the case. The defendant also makes the sweeping contention that, under the holdings of the Federal courts, the doctrine of *res ipsa* is never applied in master and servant cases. The parties agree that the case is governed as to the law by the Federal Employers' Liability Act. Much attention is devoted in the briefs to the question whether, under the present state of the law, the doctrine of *res ipsa* is applicable to master and servant cases. In support of its contention, the defendant relies upon *Patton v. Texas & P. R. Co.,* 179 U. S. 658; also, *Midland V. R. Co. v. Fulgham,* 104 C. C. A. 151 (181 Fed. 91). We are not disposed to enter into a very exhaustive discussion of this rather elusive subject. A few general observations thereon will suffice to indicate our view that the doc-

trine is not controlling in the present case. In its extreme application, this doctrine would permit the mere fact of an accident to be deemed as prima-facie evidence of negligence as the cause thereof. In this form, the doctrine has not been favored by the courts, and its application has been confined to a very limited field, its most common and prominent application being in favor of a passenger against a common carrier. See *Case v. Chicago, R. I. & P. R. Co.,* 64 Iowa 762; *Baldwin v. St. Louis, K. & N. R. Co.,* 68 Iowa 37; *Kuhns v. Wisconsin, I. & N. R. Co.,* 70 Iowa 561, 565; *O'Connor v. Illinois Cent. R. Co.,* 83 Iowa 105; *Haden v. Sioux City & Pac. R. Co.,* 99 Iowa 735; *Brownfield v. Chicago, R. I. & P. R. Co.,* 107 Iowa 254. In this form, it has not been deemed applicable to master and servant cases. But there has been a quite uniform tendency in the courts to give recognition to the doctrine in a qualified form, and to extend its applicability accordingly. *Marceau v. Rutland R. Co.,* 211 N. Y. 203 (105 N. E. 206, 207). The doctrine in such qualified form is not that the mere fact of an accident is, of itself, evidence of negligence as a cause thereof, but that the *nature* of an accident in manner and circumstance *may* be such as to indicate negligence as a cause thereof; that is to say that the circumstances of an accident may be of such a nature as to constitute circumstantial evidence tending to show negligence. Some accidents, therefore, may be of such a nature as to render the doctrine applicable, while other accidents may be of such a nature as to render it inapplicable. In considering this question, it must be borne in mind that it is not the fact of *injury* of a plaintiff which gives rise to the application of the doctrine, but it is the accidental event from which injury resulted. *Fitch v. Mason City & C. L. Trac. Co.,* 124 Iowa 665, 668; *Cahill v. Illinois Cent. R. Co.,* 148 Iowa 241; *Thomas v. Boston El. R. Co.,* 193 Mass. 438 (79 N. E. 749);

*Wyatt v. Pacific Elec. R. Co.,* 156 Calif. 170; *Levin v. Philadelphia & R. R. Co.,* 228 Pa. 266 (77 Atl. 456); *Eisentrager v. Great Northern R. Co.,* 178 Iowa 713. Where an *accident* is, in its nature and circumstances, separable in identity from the *injury* of a complaining plaintiff, it is these circumstances that are looked to, to determine the applicability of the doctrine in question. The derailment of a train; a collision of trains; an overturned coach; a broken bridge,—these are illustrative of accidents which are often attended with circumstances indicating their cause, and which would be deemed as accidents even though they had not resulted in injury to the particular plaintiff. If the circumstances disclosed are not such as tend to indicate negligence, then they cannot be deemed to *speak.* If they do tend to indicate negligence, they do speak, as circumstances only, and to that extent the doctrine becomes applicable. When thus applicable, we see no reason why it may not be applicable in master and servant cases, within appropriate limits. This is especially so in cases where the defenses of contributory negligence and the fellow-servant rule are abrogated. But it is also true that the scope of its operation must ordinarily be narrower in master and servant cases than in cases between common carrier and passenger, because the mutual obligations between master and servant are by no means identical with those that obtain between carrier and passenger. A very full consideration of the question will be found in *Basham v. Chicago Great Western R. Co.,* 178 Iowa 998.

Turning, then, to the case before us, what was the accident which resulted in the plaintiff's injury? It was a sudden jerking, to an unusual degree, of the caboose of a freight train. What were the circumstances of this unusual jerking? In a sense, there were no circumstances except the fact of the jerking, unless we treat as a circumstance the fact that the train was about to stop at the water tank:

Such a stop would need to be at a particular place, and the attempt to make it might result in a sudden jerking.   The so-called accident was so void of circumstances that it would not have been deemed as an accident at all, except for the injury to the plaintiff.   We think it quite clear that there is nothing in the nature of the circumstances of this accident to open the door to the application of the doctrine of *res ipsa*.   To apply such doctrine to this case would be, in effect, to say that the fact of the injury is prima-facie proof of the negligence.

3. MASTER AND SERVANT: actions: negligence: sudden jerk of train.
This leaves an inquiry whether, independently of such doctrine, sufficient evidence of negligence is to be found in the record.   At this point, we take note of the contention of the plaintiff that he proved that there was no obstruction upon the railway, and that, therefore, there was no occasion for the jerk.   For the establishment of this fact, the plaintiff relies upon the testimony of the engineer, Johnson.   This witness testified in denial of the testimony of plaintiff.   He testified that there was no unusual jerk.   It inhered in such denial that there was no reason for a jerk.   If the plaintiff had no case without this negative testimony of the engineer, we fail to see how his case could be made stronger by a denial of the testimony upon which he relied.   The testimony of Johnson does show that he stopped the train at the tank; that he had come for most of the distance down grade, and had to use the brakes for a proper stop.   There is no claim that the plaintiff did not know that the usual stop was to be made.   Indeed, he himself testified that it was usual, and that no warning was usually given.   That such a stop would result in a jerking more or less severe is a matter of such common knowledge as to have come practically within the range of judicial notice.   The books are full of cases where negligence has been predicated upon the jerking of a freight

train, and it has been held, with practical unanimity, that the jerking of a freight train, even though severe and unusual, is not, of itself, evidence of negligence as to employees operating the same. It becomes negligence only when the injured employee is known to be in a position of peril. *Whitsett v. Chicago, R. I. & P. Co.,* 67 Iowa 150, 157; *Chesapeake & O. R. Co. v. Walker's Admr.,* 159 Ky. 237; *Beaton v. Great Northern R. Co.,* 123 Minn. 178 (143 N. W. 324); *Burtnett v. Erie R. Co.,* 144 N. Y. Supp. 969; *Ray v. Chicago, B. & Q. R. Co.,* 147 Mo. App. 332; *Hawk v. Chicago, B. & Q. R. Co.,* 130 Mo. App. 658; *Hedrick v. Missouri Pac. R. Co.,* 195 Mo. 104; *Erwin v. Kansas City, Ft. S. & M. R. Co.,* 94 Mo. App. 289 (68 S. W. 88); *Guffey v. Hannibal & St. J. R. Co.,* 53 Mo. App. 462; *Saunders v. Chicago & N. W. R. Co.,* 6 S. D. 40 (60 N. W. 148); *Wright v. Sioux Falls Trac. System,* 28 S. D. 379 (133 N. W. 696); *St. Louis & S. F. R. Co. v. Gosnell,* 23 Okla. 588; *Usury v. Watkins,* 152 N. C. 760 (67 S. E. 926); *Weinschenk v. New York, N. H. & H. R. Co.,* 190 Mass. 250 (76 N. E. 662); *Frohriep v. Lake Shore & M. S. R. Co.,* 131 Mich. 459 (91 N. W. 748).

The appellee places special reliance upon *Douda v. Chicago, R. I. & P. R. Co.,* 141 Iowa 82; *Texas & Pac. R. Co. v. Behymer,* 189 U. S. 468; *Texas & Pac. R. Co. v. Putnam,* 57 C. C. A. 58. In all these cited cases, the injured party was known to be temporarily in a position of danger. In the *Douda* case, he was under the engine. No movement of the engine was possible without injury to him. In the second case mentioned, the injured party was on the top of an ice-covered car, and was thrown therefrom. In the third case, he was on the draw-bar, and was thrown therefrom. The negligence in these cases was predicated to a large extent upon the special duty owed to the employee temporarily in his position of danger. That element is entirely absent in the case before us. We think, therefore, that it

must be said that the plaintiff failed in his proof of negligence, and that the trial court correctly ruled in the directing of a verdict at the close of the evidence. It follows that the order granting a new trial was erroneous, and it is, accordingly,—*Reversed.*

Gaynor, C. J., Ladd and Salinger, JJ., concur.