# JOHN HELMER v. SHEVLIN-MATHIEU LUMBER COMPANY.[1]

March 5, 1915.

Nos. 19,087—(279).

**Appeal from judgment — waiver of right to new trial — action for cutting timber.**

In this action to recover for timber cut and removed by defendant from land claimed to be owned by plaintiff, it is *held:*

(1) Defendant having moved for judgment notwithstanding the verdict, but not for a new trial, it waived its right to the latter, and on an appeal from the judgment assignments of error in the admission of evidence or in the charge that bear only on the right to a new trial will not be considered.

(2)_ The evidence conclusively shows that a deed under which defendant claimed title to the land was a forgery.

(3) Tax deeds under which defendant claimed title *held* void on their face, and further that even if valid the land was subject to redemption, and the notices of expiration of the time to redeem were void under De Laurier v. Stilson, 121 Minn. 339.

(4) Plaintiff was the record owner. The fact that he had not paid the taxes on the property, or that he had not redeemed from tax sales thereof on which the state was the purchaser, did not prevent his maintaining an action against a stranger for cutting and removing timber on the land.

(5) Plaintiff was not estopped by his conduct from claiming ownership of the land or from maintaining this action.

(6) There was nothing in the transaction by which plaintiff acquired title to the land which makes it void as against public policy, or prevents plaintiff from obtaining relief in this action.

Action in the district court for Itasca county to recover $10,473.99 for cutting and removing timber from plaintiff's land. The case was tried before Stanton, J., and a jury which returned a verdict for $2,077.38. Defendant's motion for judgment notwithstanding

[1] Reported in 151 N. W. 421.

the verdict was denied. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*Powell & Simpson* and *Ernest C. Carman,* for appellant.

*Alford & Hunt* and *George H. Spear,* for respondent.

BUNN, J.

This action was to recover for timber cut by defendant from an 80-acre tract of land in Itasca county claimed by plaintiff to have been owned by him at the time of the cutting. There was a verdict for plaintiff. Defendant moved for judgment notwithstanding the verdict, but not for a new trial. The motion was denied, judgment was entered on the verdict, and defendant appealed therefrom to this court.

1. Defendant not having moved for a new trial, we have only to consider whether there was error in denying the motion for judgment. Questions as to errors in the admission of evidence or in the charge are not before us, as such errors would be immaterial on the question of defendant's right to judgment, and it has waived its right to a new trial by failing to ask it. Bragg v. Chicago, M. & St. P. Ry. Co. 81 Minn. 130, 83 N. W. 511; Krumdick v. Chicago & N. W. Ry. Co. 90 Minn. 260, 95 N. W. 1122; Northwestern Marble & Title Co. v. Williams, 128 Minn. 514, 151 N. W. 541.

Our inquiry is therefore confined to the question whether there was evidence reasonably tending to sustain a verdict for plaintiff. The chief issue was as to the ownership of the land at the time the timber was cut. The facts bearing on this issue are as follows:

Thomas Simpson was the patentee of the land. The receiver's receipt was issued to him October 22, 1885, and the patent March 20, 1886. Neither was recorded until 1909, when plaintiff, after a deed from Simpson to himself, caused the patent to be placed on record. Simpson seems to have disappeared. May 27, 1905, one Shaw obtained tax deeds to the land. August 15, 1905, there was recorded what purported to be a deed from Thomas Simpson conveying the land to one J. D. Campbell. The tax deeds were recorded August 31, 1905. November 15, 1905, Campbell gave to Thomas H. Shevlin a quitclaim timber permit, granting the right to cut and

remove the timber on the land within five years. This was recorded in December, 1905. November 18, 1905, Shaw, the grantee in the tax deeds, quitclaimed to Thomas H. Shevlin. This instrument was recorded November 27, 1905. Defendant obtained whatever title it had to the land in question through a deed in 1909 from Shevlin. It cut and logged the timber on the lands in November, 1910.

March 21, 1907, Thomas Simpson conveyed the land in question to the plaintiff by a quitclaim deed. Plaintiff's claim of title, and his claim of a right to recover in this action, is based upon this deed.

2. The prior deed from Simpson to Campbell was a forgery. This was one of the litigated questions on the trial, and perhaps the chief one, but the evidence is such that there is no fair question here that Simpson never executed this deed. He did execute the deed to plaintiff in 1907. It follows that plaintiff was the owner of the land at the time defendant cut the timber, unless the tax title was good.

3. As to the tax title. The land was bid in by the state in May, 1902, and, not being redeemed or assigned within three years, became the "absolute property of the state." Laws 1902, p. 14, c. 2, provided that such lands should be offered at public annual sales, after due publication and notice thereof, and that the purchaser should receive a certificate in such form as the attorney general may prescribe. The tax deeds in question were issued May 27, 1905. They do not comply with the form prescribed under the act of 1902 in several particulars. They do not state what years taxes were delinquent, or that the land was offered for sale, or that it is subject to redemption, or that notice was published. On the contrary the deeds recite that the state auditor directed the county auditor to sell the land at private sale. The act of 1902 repealed the former law, found in G. S. 1894, § 1616. These deeds were, we think, void on their face. Even if this were not so, the attempt made to cut off the right of redemption was quite plainly ineffectual. This right was given by Laws 1905, p. 279, c. 211, and page 406, chapter 270. The deeds were not, as seems to be claimed by defendant, *prima facie* evidence that notices of expiration of redemption had been given, and an attempt was made to give such notices, but these

notices were bad under our decisions. We will mention but one defect. They fail wholly to state that the certificates were presented to the county auditor by the holder thereof. This is a fatal defect. De Laurier v. Stilson, 121 Minn. 339, 141 N. W. 293.

4. Defendant makes the claim that plaintiff was not the owner of the land, because it had become the "absolute property" of the state, or at least that he could not maintain this action for trespass until he had paid and discharged the taxes on the land. As plaintiff had a right to redeem, we think he had sufficient title to the land to give him the right to prosecute trespassers. The contention that he cannot recover because the taxes were unpaid is based upon G. S. 1913, § 2184, which provides that no standing timber "on which a lien for taxes has attached shall be removed from any tract of land until all the taxes assessed against such tract and due and payable shall have been fully paid and discharged." We fail to see how this statute affects the owner's right to recover against a stranger who removes the timber.

5. It is insisted that plaintiff is estopped by his conduct from asserting ownership of the land, and from maintaining this action. The facts relied upon to conclusively show this estoppel are that plaintiff knew that defendant claimed the land under the forged deed and under the tax titles, and would eventually cut the timber, but nevertheless obtained a deed himself from Simpson and recorded it. This was done more than two years before the defendant cut any of the timber. It is claimed that defendant did not know of the deed to plaintiff, or that its own deed was a forgery, when it cut the timber, and that plaintiff's silence under the circumstances amounts to an estoppel. But the deed from Simpson to plaintiff was of record, and, from this and other circumstances in the case, it is too much to say that defendant relied upon or was misled by plaintiff's conduct. Plaintiff could hardly be charged with knowledge that defendant would act upon his conduct to its prejudice, with his title clearly appearing on the records. There is absolutely no evidence that defendant was misled or deceived to its prejudice, or that it relied upon or acted upon the conduct of plaintiff in such a manner as to change its position for the worse. The cases of Macomber v.

Kinney, 114 Minn. 146, 128 N. W. 1001, 130 N. W. 851, and Purcell v. Thornton, 128 Minn. 255, 150 N. W. 899, do not help defendant.

6. It is further claimed that plaintiff cannot maintain this action because of public policy. While counsel for defendant are very severe in their comments upon plaintiff's character and his conduct in "buying up possibilities of damage suits and laying traps for the commission of acts upon which such suits might be based," and while it may be true that plaintiff is not wholly innocent of all of the charges so freely made against him by counsel, we see nothing in the line of barratry or champerty that would justify a court of equity in refusing him relief. The deed from Simpson made plaintiff the owner of the land. As such owner he clearly had the right to sue for a subsequent trespass. It is true that the deed from Simpson to plaintiff contained an express assignment of all rights and causes of action which the grantor had for the cutting or removing of any timber from the land. It is also true that this deed was given pursuant to an offer by plaintiff to pay Simpson $50 in cash and one-fourth of the profits plaintiff could make, plaintiff to "stand all the expenses." But the assignment of the "rights and causes of action" that Simpson had added nothing to the deed, as there was no cutting or removal of timber until long after the deed was given and recorded. The mere fact that Simpson, as a part of the consideration for the conveyance, was to have a share in the profits plaintiff might make from the transaction, does not make the contract against public policy. We are unable to sustain this contention of defendant.

Our conclusion is that the evidence reasonably tended to justify the verdict, and that we have no right to reverse the judgment appealed from.

Judgment affirmed.