J. F. PERKINS v. GREAT NORTHERN RAILWAY COMPANY.[1]

May 26, 1922.

No. 22,756.

**Federal Safety Appliance Act — hatch handle on refrigerator car.**
1. The Federal Safety Appliance Act does not extend to hatch handles on refrigerator cars.

**Negligence of engineer — absence of proof.**
2. Plaintiff fell from a moving freight train as he was descending a car next to the engine to get upon the tender. He asserted that,

[1]Reported in 188 N. W. 564.

while running at a speed of 15 or 20 miles an hour, the engine stopped for an instant, and, as a result, the train was so suddenly and violently jerked that he lost his balance. He attributed the momentary stoppage of the engine to a reversal of its forward motion caused by some manipulation of the reverse lever by the engineer, but there was no proof that such was the fact. Under these circumstances, it is *held* that a prima facie case of negligence in the operation of the train was not established.

**Res gestae — self-serving statement of plaintiff inadmissible in personal injury action.**

3. After detailing the circumstances attending his injury, plaintiff recounted the statement he made to the persons who later came to his assistance. The statement was of a self-serving nature and was not offered to rebut an attack on the credibility of plaintiff's testimony. Even though it was so closely connected with the accident as to become part of the res gestae, it should not have been received in evidence. The res gestae doctrine should not be extended so as to permit a party to testify to his own self-serving declarations.

Action in the district court for Douglas county to recover $80,000 for injuries received while employed as a brakeman by defendant. The answer alleged that plaintiff assumed the risks and dangers of his employment. The case was tried before Nye, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $31,000. From an order granting its motion for judgment notwithstanding the verdict and for a new trial unless plaintiff consented to a reduction of the verdict to $24,000, defendant appealed. Reversed and new trial granted.

*M. L. Countryman* and *A. L. Janes,* for appellant.

*Tom Davis* and *Ernest A. Michel,* for respondent.

LEES, C.

Plaintiff was head brakeman on one of defendant's freight trains. On September 16, 1920, he was injured when he fell from the train while it was running between Cokato and Smith Lake in this state. He brought this action under the Federal Employers Liability Act, charging defendant with negligence in the following particulars:

(1) In permitting the handhold on top of a refrigerator car next to the engine to become so insecure that it pulled out as plaintiff was descending from the car to the tender; (2) in operating the engine with a "Johnson bar" or reverse lever, which was so defective that the engineer was unable to control the movements of the train, and, as a consequence, the train was jerked and the refrigerator car suddenly and violently thrown against the engine.

The jury were instructed not to consider the evidence relating to the alleged defective condition of the reverse lever, but that plaintiff was entitled to a verdict if the handhold was defective or if the motion of the train was suddenly and violently checked without warning to plaintiff and his injury resulted proximately from either cause. A verdict was returned in plaintiff's favor for $31,000. Defendant moved for judgment notwithstanding or for a new trial. The motion for judgment was denied. The motion for a new trial was granted, unless plaintiff consented to accept a reduction of the verdict to $24,000. He consented to the reduction and defendant appealed.

1. There was evidence tending to show that the handle of the hatch cover on the refrigerator car next to the engine was missing. It was attached to a block of wood fastened by screws to the roof of the car near the handhold alleged to have been defective. The Federal Safety Appliance Act does not extend to hatch handles on refrigerator cars. The accident happened at about one o'clock in the morning. Seven or eight hours later, a section man found a hatch handle on the ground beside the track at the place where plaintiff fell from the train. The screws were still in the block of wood and showed that they had been pulled out of the roof of the car. Defendant's inspectors who examined the car soon after the accident testified that they found the handhold firmly bolted to the roof of the car; that there was rust on the thread of the bolts, indicating that they had not been recently disturbed; and that the hatch handle was not to be found. Defendant contends that it was conclusively shown that plaintiff grasped the hatch handle instead of the handhold when he attempted to descend from the car, that it gave way, and, as a result, he fell. Plaintiff testified that as he started to go over the end of the car the "grab iron fell loose" and he lost his

balance; that he knew it gave way because he felt it pull through his hand; that he did not know whether it broke away from the car, but did know that the end next to the running board pulled loose.  He also testified that he went down the ladder at the end of the car next to the engine earlier in the night and noticed nothing wrong with the handhold at that time.  All the physical facts tend to show that plaintiff was mistaken and that in fact he grasped the hatch handle instead of the handhold when he started to go down the car, but it is unnecessary to decide whether a verdict based on the charge that the handhold was defective should be allowed to stand, for there must be a new trial for another reason.

2.   Plaintiff testified that the reverse lever on the engine was hard to shift; that on the night in question the engineer asked him to help pull it up and that it took all his strength to do so.  This was denied by the engineer.   Plaintiff further testified as follows:

"When I got to the refrigerator car  *  *  *  and was just in the act of going down the end ladder on that car when that engine seemed to stop just momentarily  *  *  *  and the cars came together and it knocked me head first down, and the grab iron fell loose, and, of course, I lost my balance and fell down."

Also that when the engine stopped there was a sudden violent jerk, and that the train was then running at a speed of 15 or 20 miles an hour.   The train was composed of 52 cars, 10 loaded with horses and 13 with cattle, in charge of two men who were in a passenger coach ahead of the caboose.  They were awake when the accident happened and testified that there was no jerk of the train on the run from Cokato to Smith Lake, that it ran along in the ordinary way, and that none of the horses or cattle were injured on the trip.   The train men had set a table for supper in the caboose.  None of the dishes were broken or thrown from the table.

The engineer testified that while running between Cokato and Smith Lake he did not shift or attempt to shift the reverse lever or apply the air brakes, or shut off the throttle valve.  Plaintiff did not profess to know what caused the engine to stop, but testified that he knew from experience that, if the reverse lever was pulled

back over center, it would throw the engine in reverse motion so that it would momentarily stop and go backward if it was working under steam, and he attributed the alleged stop to this cause. But there was no proof that there was any manipulation of the reverse lever at the time of the accident. Not only was there a lack of affirmative proof, but a number of experienced engineers testified that, if a train of 52 cars was moving ahead at a speed of 15 or 20 miles an hour and the engineer did so reckless a thing as to throw the engine in reverse while it was working under steam, the train in all likelihood would be wrecked; and some testified that it was a physical impossibility to reverse an engine like the one in question without first shutting off steam.

Upon this state of the record, the ultimate question is this: May negligence be established by showing that the forward motion of a freight train was suddenly and violently checked and the cars jerked without also showing that it was due to some negligent act or omission on the part of defendant's employes in charge of the train? Martyn v. Minnesota & I. Ry. Co. 95 Minn. 333, 104 N. W. 133; Owens v. Chicago G. W. R. Co. 113 Minn. 49, 128 N. W. 1011; Beaton v. Great North. Ry. Co. 123 Minn. 178, 143 N. W. 324, and Hunt v. Chicago, B. & Q. Ry. Co. 181 Iowa, 845, 165 N. W. 105, are cited to support a negative answer, and La Mere v. Railway Transfer Co. 125 Minn. 159, 145 N. W. 1068, Ann. Cas. 1915C, 667, to support one in the affirmative. Many cases are collected in Hunt v. Chicago, B. & Q. Ry. Co. and the writer of the opinion in that case gathered from them that the jerking of a freight train, even though severe and unusual, is not of itself evidence of negligence as to employes operating the train. None of our own decisions contain a statement so broad and general.

In the Martyn case, the charge of negligence was that as plaintiff attempted to board an engine the engineer suddenly started it running at a much greater rate of speed. A recovery was denied because there was no proof that the engineer opened the throttle valve and so caused the engine to shoot ahead.

In the Owens case, there was a sudden stoppage of the train and proof sufficient to justify the jury in finding that it resulted from

the act of the engineer in applying the brakes improperly. The jury were instructed that the plaintiff must prove that the accident was caused by this act of the engineer, and a recovery was sustained.

In the Beaton case, it was said that the bringing of cars together with unusual force is an element to be considered in determining whether a railroad company was negligent, but is not in itself evidence of negligence under any and all circumstances. A recovery was denied for want of evidence of the circumstances under which a violent impact of cars occurred or of what occasioned it.

In the La Mere case, the charge of negligence was that the engineer made an emergency stop when there was no emergency, and that the jerk of the train threw plaintiff from the side of a car down which he was climbing. There was evidence to support the charge and a recovery was sustained.

In Fry v. Minneapolis, St. P. & Sault Ste. M. Ry. Co. 141 Minn. 32, 169 N. W. 147, the charge was that a negligent application of the air brakes caused the train to give two violent jerks which threw plaintiff off. The court said that his right to recover depended upon the sufficiency of the evidence to support the finding that the air brakes were negligently applied by the engineer.

As we read these decisions, it has not yet been held that a sudden and momentary checking of the motion of a freight train is of itself proof of negligence in its operation. In each case where a recovery was allowed there was proof of some specific act of the engineer which was of a negligent character. In the case at bar, viewing the evidence in the light most favorable to plaintiff, all we have is this: Suddenly, for no apparent reason, an engine, pulling a heavy freight train at an ordinary rate of speed, stops for an instant and then goes on as before. The train is jerked violently. There was no application or occasion for an application of the air brakes and no explanation of the extraordinary circumstance. If the engineer had reversed the engine, this might have happened. Therefore, no other cause for the momentary stop being shown, plaintiff's theory is that it did happen. It seems to us that this is purely conjectural, and, of course, a verdict cannot stand if based upon mere possibility or

conjecture. For this reason we hold that the evidence fell short of making a prima facie case of negligence in the operation of the engine, and hence there must be a new trial. We do not hold that under no possible combination of circumstances can negligence be inferred from the naked fact that the speed of a freight train was checked suddenly and violently under unusual or extraordinary circumstances.

3. When plaintiff was missed, George A. Coppersmith, one of defendant's conductors, took an engine and caboose and went back to look for him. He arrived at the place of the accident at the same time as a farmer named Preus. When plaintiff was giving his testimony in chief, and after he had stated how he was hurt, he was asked this question:

Q. Was there any talk between you and him (Coppersmith) in regard to the happening of the accident?

A. Yes, sir.

Q. This talk * * * was about an hour and a half after you were hurt, was it?

A. Yes, sir; something like that.

Q. Now, I wish you would tell the jury what you said to Mr. Coppersmith regarding how the accident happened and what he said to you."

Objection was made on the ground that the question called for hearsay testimony and a self-serving declaration and that there was no foundation for the admission of a res gestae statement. The objection was overruled and plaintiff answered:

"He says, 'How did it happen, Buddy,' and I said, 'The engineer jerked the cars, the handhold gave way and I fell.' "

Subsequently and without objection testimony to the same effect was given by Mr. Preus. In view of this, if it was error to receive plaintiff's testimony, it is doubtful whether the error was prejudicial. But since there is to be a new trial, it is proper to indicate our views respecting the admissibility of the testimony objected to. In harmony with the decided weight of authority, this court has adopted the rule that in general the testimony of a party may not be con-

firmed by proving previous declarations in his own favor consonant with his testimony. Fredin v. Richards, 66 Minn. 46, 68 N. W. 402; State v. La Bar, 131 Minn. 432, 155 N. W. 211; Barrett v. Van Duzee, 139 Minn. 351, 166 N. W. 407. The exception to the rule mentioned in State v. La Bar, was elaborately considered in Lyke v. Lehigh Valley R. Co. 236 Pa. 38, 84 Atl. 595. See also 2 Wigmore, Ev. § 1124, Jones, Ev. § 870. It is clear that the general rule and not the exception is applicable to the testimony in question.

It is suggested that plaintiff's declaration, though self-serving, was so closely connected with the accident that it must be regarded as a spontaneous utterance, and hence was properly received in evidence as part of the res gestae. To say the least, this is doubtful. A considerable period of time intervened between the accident and the declaration—enough to permit of afterthought, which the law distrusts. There was a longer interval of time than in any case where the admission of declarations has been sustained. State v. Alton, 105 Minn. 410, 117 N. W. 617, 15 Ann Cas. 806; Lambrecht v. Schreyer, 129 Minn. 271, 152 N. W. 645, L. R. A. 1915E, 812; Meyer v. Travelers Ins. Co. 130 Minn. 242, 153 N. W. 523; Roach v. Great Northern Ry. Co. 133 Minn. 257, 158 N. W. 232; State v. Rothi, 152 Minn. 73, 188 N. W. 50. Conceding for the purpose of this discussion that, in the exercise of the broad discretion possessed by the trial court, it was not required to reject the testimony for this reason, another difficulty is encountered.

Plaintiff had testified fully to the circumstances under which he was injured. The jury had his sworn statement. He was not impeached by proof of contrary statements out of court. In effect he was permitted to give in evidence his unsworn self-serving declaration otherwise clearly inadmissible on the theory that because the declaration was part of the res gestae he might testify that he had made it and that, if made, it tended to prove that the facts were as he had related them from the witness stand. In support of this theory, it may be argued that the law permits one who heard the spontaneous utterance of a party to testify to it, and hence there is no good reason why the party himself may not testify to his own exclamations. In Lambrecht v. Schreyer, supra, it was said that

the testimony might come from the person who made the declaration, but this was said with reference to testimony given by a witness for the plaintiff and not by the plaintiff himself. So far as we have discovered, it has never been held that a party may bolster up his case by testimony that he made a self-serving declaration so closely connected with an injury he received as to be part of the res gestae, and a court should be reluctant to adopt a rule of evidence which would tempt a party accidentally injured to make evidence for himself. Plaintiff's testimony was not made competent because Preus and Coppersmith heard his statement. It would have been just as competent if heard by someone he did not know and could not procure as a witness. In no state has the res gestae doctrine been extended farther than in Minnesota. The extension now proposed would not serve the purpose of getting at the truth, which is the sole end towards which all rules of evidence should be directed. For these reasons we are of the opinion that plaintiff should not have been allowed to give the testimony in question.

The order denying a new trial is reversed and a new trial granted.