## ADOLPH D. KRAUSE v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

February 20, 1925.

No. 24,177.

**On appeal from judgment supreme court will not consider part of statute excluded from evidence at trial.**

1. In his complaint, plaintiff pleaded all of section 1816, Statutes of Wisconsin, except subdivision 8 thereof. Defendant pleaded subdivision 8. The reply was a general denial. Upon trial, defendant offered in evidence subdivision 8, which was excluded. Upon an appeal from the judgment, this court cannot consider that portion of the statute which was. excluded.

**After denial of judgment notwithstanding, errors in admission of evidence will not be considered.**

2. Defendant moved for judgment notwithstanding the verdict, but not for a new trial, which was denied. Upon an appeal from the judgment following, assignments of error in the admission of evidence will not be considered.

**Sufficient evidence of negligence in management of logging train.**

3. Plaintiff was riding on the floor of a flatcar loaded with pulp logs. He stood on bare floor space from 4 to 6 feet wide at the easterly end, holding around a log that stuck out farther than the other logs. The train was traveling backward to the east. His duty required him to be at this place. The enginemen knew that someone had to be on that end of the car to keep a lookout ahead. In the operation of the locomotive the train was given a severe and unusual jerk, throwing plaintiff off ahead of the train, as it was backing up, and he was run over and injured. *Held* evidence was sufficient to justify the jury in finding negligence on the part of the defendant. Fry v. M. St. P. & S. S. M. Ry. Co. 141 Minn. 32, followed.

*Headnote 1. See Appeal and Error, 4 C. J. p. 679, § 2581; Evidence, 23 C. J. p. 133, § 1950.

Headnote 2. See Appeal and Error, 4 C. J. p. 666, § 2558 (1926 Anno).

Headnote 3. See Master and Servant, 26 Cyc. p. 1447.

Headnote 4. See Terrific, 38 Cyc. p. 190 (1926 Anno).

[1]Reported in 202 N. W. 345.

Action in the district court for Winona county to recover $60,000. The case was tried before Callaghan, J., and a jury which returned a verdict for $15,000. From an order denying its motion for judgment notwithstanding the verdict, defendant appealed. Affirmed.

*F. W. Root, C. O. Newcomb* and *A. C. Erdall, Daly & Barnard* and *M. B. Webber,* for appellant.

*Barton & Kamuchey,* for respondent.

WILSON, C. J.

This is an action brought by the plaintiff, a citizen of the state of Wisconsin, to recover·for personal injuries sustained, while in the employ of defendant as switchman, at Menasha in that state. His injuries resulted in the amputation of a leg. In the first trial he was awarded $25,000. In this, the second trial, a verdict of $15,000 was returned in favor of plaintiff. Defendant moved for judgment notwithstanding the verdict, which motion was denied. No motion for new trial was made. This appeal is from a judgment entered on the verdict.

Plaintiff bases his right of action upon the Wisconsin statutes. He pleads and sets forth in his complaint all of section 1816 of the statutes of the state of Wisconsin, except subdivision 8 thereof. The defendant pleads subdivision 8 in its answer. The reply was a general denial. At the trial, plaintiff placed in evidence that portion of section 1816 set forth in the complaint. That portion of the Wisconsin statute in evidence is similar to our statute upon the same subject. Defendant offered subdivision 8 in evidence which, upon objection, was excluded. The offer was made for the purpose of showing that the Wisconsin statute should not be given effect in this state because it is in derogation of the comity due from one state to another.

The reason the Wisconsin statute should not be given effect in this state, if there is any such reason, is found in that portion of section 1816 which was excluded. This court cannot take judicial notice of that portion of the statute which is not in evidence. It is not before us. Neither may we consider the correctness of the

ruling which excluded it, because this is an appeal from an order denying defendant's motion for judgment notwithstanding the verdict. Northwestern M. & T. Co. v. Williams, 128 Minn. 514, 151 N. W. 419, L. R. A. 1915D, 1077; Helmer v. Shevlin-Mathieu L. Co. 129 Minn. 25, 151 N. W. 421; Prigge v. Selz, Schwab & Co. 134 Minn. 245, 158 N. W. 975; Hoggarth v. M. & St. L. R. Co. 138 Minn. 472, 164 N. W. 658; The National Cash Register Co. v. Merrigan, 148 Minn. 270, 181 N. W. 585.

It is well settled that the only question which will be considered on an appeal from a judgment is, where a motion for judgment notwithstanding the verdict has been denied, whether there is any competent evidence reasonably tending to sustain the verdict. If the verdict be thus sustained, the judgment must stand.

The switching crew, of which plaintiff was a member at the time of the accident in April, 1922, was composed of 5 men—the locomotive engineer, the fireman, the conductor, Richards the head switchman, working next to the locomotive, and plaintiff, the rear switchman, working at the opposite end of the train or string of cars. All 5 men were long experienced in the switching and handling of freight cars in the railroad business. On the morning of the accident, the locomotive was headed to the west. Attached to the tender of the locomotive were 7 flat cars, loaded with pulp logs to be delivered at or near the paper mills, on the log track east of where the locomotive was standing. The logs were not all of the same length. They were loaded in two tiers so that the ends of the logs at the end of the cars were not even, some extending out farther than others, and at each end there was a bare floor space from 4 to 6 feet wide. In moving to the log track, it was necessary for the locomotive to back up, pushing the 7 cars past the depot and the water tank. It was the custom to go onto the log track with a full tank of water. This custom was known to all members of the crew. The time of taking water was always determined by the engineer. There was a street crossing 3 carlengths east of the water tank.

When there were but 3 cars, water was taken without uncoupling the locomotive, as this would not block the street, but with more

cars the engine would stop on the street, uncouple, and go back to the tank leaving the street open. When the accident happened, as hereinafter mentioned, the engine was 50 to 60 feet east of the street crossing.

When the locomotive started east with the 7 cars, plaintiff was standing on the car floor, at the east end of the most easterly car, 4 to 6 feet from the end and about 18 inches from the side, having a firm hold around a log that stuck out further than the other logs. Richards stood on the same floor on the north side and opposite plaintiff, but he, apparently in pursuit of his duties as head brakeman, climbed down on his side before the accident happened. As the train was thus traveling at 5 to 6 miles per hour and before it reached the usual stopping place to separate the engine to go to the tank and leave the street crossing open, the engineer operated the locomotive so as to give a severe and unusual jerk, throwing plaintiff off ahead of the train, as it was backing up, and he says he landed on the ground 5 or 6 feet from the car in a doubled-up position, and as he was trying to get out of the way the train was hurled toward him with awful force striking him in the back, knocking him down and passing two and a half cars over him, cutting off his leg. Do the facts show actionable negligence?

Plaintiff was at the position on the car where his duty required him to be. The enginemen knew that somebody had to be on that end of the car. It was plaintiff's duty to be there to keep a lookout ahead. The plaintiff was thrown off. This was done by the operation of the engine. Plaintiff claims that the engineer was negligent because of the failure to exercise that care which a person of ordinary prudence would exercise under the same circumstances. There is evidence to show that plaintiff was thrown off by an unusual and severe jerk caused by bringing the cars to a sudden stop when there was no necessity for it. It had not yet reached the place where it was to stop for the engine to be uncoupled. Plaintiff testified: "It was a sudden and severe—just jerked the cars out from under me— the cars just bounded back." He said he had never experienced any such jerk before and that he had ridden daily in the same place and in the same kind of work. He said he got a "terrific jerk."

He said in switching work you do not get hard jerks like this kind of a one. He said: "You get hard jerks but not the kind that one was." He said this jerk was not an ordinary jerk. The word "terrific" means terrible—appalling—it is akin to terror.

The mere proof of a severe jerk in the operation of a freight train is not sufficient to constitute actionable negligence. Perkins v. G. N. Ry. Co. 152 Minn. 226, 188 N. W. 564; Griffin v. Minn. Trans. Ry. Co. 94 Minn. 191, 102 N. W. 391; Beaton v. G. N. Ry. Co. 123 Minn. 178, 143 N. W. 324. But in the Griffin case the employe was not taken unaware. In the Beaton case the employe was not a member of the train crew and his presence was unknown to the train crew. The claim here that the engineer negligently applied the brakes so as to unusually jerk the train at a time and place where it was not necessary and not to be expected brings the case rather within the rule of LaMere v. Ry. Trans. Co. 125 Minn. 159, 145 N. W. 1068, Ann. Cas. 1915C, 667 and Fry v. M. St. P. & S. S. M. Ry. Co. 141 Minn. 32, 169 N. W. 147. In the Fry case the plaintiff was a head brakeman and he was riding on the rear end of an empty flatcar. Attached to the other end of the flatcar were 4 freight cars and a locomotive. He claimed that there came a sudden, violent, stopping jerk, which threw him off his balance and toward the west end of the car. The train was traveling backward to the west. That immediately another violent jerk came to the car which threw him onto the track 4 or 5 feet in front of the car. The train was moving about 4 miles per hour. That two wheels passed over him. That both jerks were occasioned by the engineer. In considering whether the evidence was sufficient to take the case to the jury this court said: [at page 35]

"If there were unusual jerks to the car and they were occasioned by the application of the air as claimed by plaintiff, then the defendant was chargeable with negligence. If there were not, then the plaintiff would have no cause of action. We have considered the testimony in connection with the surrounding circumstances, and are of the opinion that the same made an issue for the jury."

We are of the opinion that the Fry case controls this case. There are other authorities to the same effect. Texas & Pac. Ry. Co.

v. Behymer, 189 U. S. 468, 23 Sup. Ct. 622, 47 L. ed. 905; Lancette v. G. N. Ry Co. 140 Minn. 488, 168 N. W. 364; Rothenberger v. Powers F. F. T. & S. Co. 148 Minn. 209, 181 N. W. 641; Choctaw, O. & G. R. Co. v. Holloway, 114 F. 458, 52 C. C. A. 260. The case of Austin v. Mobile & O. R. Co. 99 South. 3, is controlled by its own facts which showed a necessity for a sudden stop which injured the plaintiff.

We conclude that the evidence was sufficient to permit the jury to find actionable negligence, and that the court properly charged the jury that, while plaintiff assumed all of the risk ordinarily incident to the work he was called upon to perform, he did not assume the risks, if any such there were, arising from the negligence of the company or its engineer.

Affirmed.


QUINN, J. (dissenting.)

I dissent. It is undisputed that, in moving to the log track, it was necessary for the lococomotive to backup, pushing the 7 cars east past the depot and water tank; that the time of taking water was always for the engineer to determine; that it was the custom to go on to the log track with a full tank of water; that this custom was known to all members of the crew; that there was a street crossing about 3 carlengths east from the water tank; that there was a slack of from 6 to 12 inches in each coupling between cars; that the air was not connected on the string; that, when the locomotive started with the 7 cars toward the log track, plaintiff, unknown to either the engineer or the fireman, swung onto the south side of the front end of the most easterly car and stood between the ends of the logs and the front edge of the floor of the car, entirely out of view of the men on the locomotive; that the engineer had not seen him that morning and did not know that he was on the job; that Richards, the head brakeman, was also on the front end of the front car and, as they passed the water tank, he climbed down and hung on the side of the car with his feet in the stirrup and had hold of a stake with his hand, in plain view of the engineer and of the plaintiff; that the locomotive was moving about 5 or 6 miles

per hour at that time but, as it neared the tank, the engineer shut off steam and gave a slight reduction of air, about 5 pounds; that when within a half carlength of the tank he again gave a slight reduction of air, for the purpose of stopping to take water; that he then received from Richards the emergency signal and immediately reversed his engine and applied the brakes. Plaintiff had fallen, his leg was injured, and it became necessary to amputate.

Immediately after the accident the engineer went and measured the distance between the end of the logs and the front edge of the car floor. He testified it was just 22 inches. Other members of the crew testified that, in their opinion, the distance was from 18 to 24 inches. Plaintiff testified that he thought it was from 4 to 6 feet. The plaintiff also testified that, in switching work, they were constantly expecting jerks; that they came without your knowing when or why until afterwards; that no engineer stops twice alike; that when steam is shut off and the brakes applied, with seven cars, there is a jerk. The conductor's testimony was to the same effect. He testified that, in switching, when steam is shut off, the slack runs out and there will be a jerk at the farther end of the string—sometimes heavy, sometimes medium, sometimes slight—probably in every movement a different jerk; that, when a man goes railroading, about the first thing he does is to learn to protect himself against the slack because, in all movements, there is a certain amount of slack.

Richards, the head brakeman, testified that he was hanging on the north side of the car in plain sight of both the engineer and the plaintiff; that he saw the plaintiff when he fell; that he immediately gave the emergency signal to the engineer; that just before the plaintiff fell there was a jerk of the cars, caused by the application of air; that the jerk did not disturb him; that, when moving down to the log track, they sometimes cut the cars off and sometimes not, for the purpose of taking water, all depending upon how the traffic was on the street—if the crossing was clear, they would take a chance and not cut off.

There is no room for doubt but that the second application of air caused the jerk that brought about plaintiff's fall. The decisive

question is: Was the engineer guilty of the slightest degree of negligence in handling his engine as shown by the testimony? If so, where does such testimony appear in the record?

It is said that the claim is, "that the engineer negligently applied the brakes so as to unusually jerk the train at the time and place where it was not necessary and not to be expected."

But the plaintiff testified that, in switching work, they are constantly expecting jerks; that they come without you knowing when or why until afterwards.

In the Perkins case, 152 Minn. 226, 188 N. W. 564, cited in the opinion, it is stated: [at page 231]

"It has not yet been held that a sudden and momentary checking of the motion of a freight train is of itself proof of negligence in its operation. In each case where a recovery was allowed there was proof of some specific act of the engineer which was of a negligent character. * * * If the engineer had reversed the engine, this might have happened. Therefore, no other cause for the momentary stop being shown, plaintiff's theory is that it did happen. It seems to us that this is purely conjectural, and, of course, a verdict cannot stand if based upon mere possibility or conjecture. For this reason we hold that the evidence fell short of making a prima facie case of negligence in the operation of the engine, and hence there must be a new trial. We do not hold that under no possible combination of circumstances can negligence be inferred from the naked fact that the speed of a freight train was checked suddenly and violently under unusual and extraordinary circumstances."

Apparently the decision herein finds lodgment in the Fry case, 141 Minn. 32, 169 N. W. 147. That case is cited in both the syllabus and in the opinion. A full consideration of the facts in that case may help to elucidate the excerpt taken therefrom.

Fry was a brakeman in charge of the train and its movements. It was the duty of the engineer to keep him in view and to obey his signals. Fry caused a string of 3 cars, attached to the locomotive, to be coupled onto a flat car. He then gave the engineer a slow back-up signal. As the flat car passed him, he boarded same

for the purpose of releasing a hand-brake on the opposite end. Under the evidence, the jury was authorized to find that the engineer, with full knowledge of Fry's position, without any signal from him and without any necessity therefor, suddenly applied the air, violently jerking the cars, then released, then applied it again, jerking the cars more violently, then again released. As Fry went off the car, the engineer continued the backward movement and ran the cars over him. An eye witness, standing near, testified that the second jerk was so violent that he saw dust fly from the flat car.

No one will question that such conduct on the part of the engineer (if the jury believed him guilty of it), was negligence to a degree approximating wilfulness. After reciting the foregoing fact, the opinion states: [at page 35]

"If there were unusual jerks to the car and they were occasioned by the application of the air, *as claimed by the plaintiff*, then the defendant was chargeable with negligence. * * * We have considered the testimony *in connection with the surrounding circumstances* and are of the opinion that the same made an issue for the jury."

The language quoted was used solely in connection with the particular facts in that case and manifestly was not intended as a statement of any rule to be used as a precedent in other cases. I discover no similarity in the facts here and, in my judgment, the language used in that case is without the slightest application here.

In the Beaton case, 123 Minn. 178, 143 N. W. 324, it was said [at page 179] that,

"The bringing of cars together with unusual force is an element to be considered in determining negligence of a railroad company, [but is not] in itself evidence of negligence under any and all circumstances. It is a matter of common knowledge that in switching operations cars are brought together with varying degrees of force. There is here no testimony as to the circumstances under which this impact occurred, nor as to what occasioned the unusual blow. There is no testimony that any of the men engaged in the switching knew

of the presence of plaintiff in this car. Under all of the testimony, we are of the opinion that there was no sufficient evidence of negligence to sustain a verdict for plaintiff."

There must be some proof of negligence aside from the mere jerk. Sudden and severe jerks and jolts, of varying degrees of violence, are frequent in such work, often fraught with great danger, yet standing alone are not sufficient to raise a presumption of negligence on the part of the engineer, nor is the injury, coupled with the mere jerk, sufficient. For the purpose of this appeal, plaintiff's injury must be deemed to have occurred in the manner described by him. The decisive question then is: Was the evidence sufficient to sustain a finding of negligence on the part of the engineer?

What were the circumstances that constituted negligence? The track was in proper condition, the engine and brakes were in good working order. There was no unusual condition, such as ice on the floor of the car. The only circumstance, attendant upon the jerking of the car, is to be found, if at all in the slowing down of the locomotive for the purpose of taking water. The locomotive had not been moving faster than from 5 to 6 miles per hour. In slowing down, the engineer shut off steam and applied the air slightly. The locomotive lessened its speed. When within a half carlength of the right spot for taking water, he applied the air again which, in such work, necessarily checked the speed of the locomotive, allowed the slack to run out, and caused the jerk complained of. Can it be said that, in so handling his engine, the engineer was guilty of negligence?

In my opinion, what occurred would not have been considered an accident at all had it not been for the injury to plaintiff. True, even when applied to master and servant, the manner and circumstances, of an accident may be such as to constitute circumstantial evidence, tending to show negligence. Some accidents may be of such character as to render the doctrine of res ipsa applicable, others may not. It is not the fact of injury which gives rise to the application of the doctrine, but it is the accidental event from which the injury resulted. Thomas v. Boston Elevated Ry. Co. 193 Mass. 438, 79 N. E. 749; Wyatt v. Pacific Elec. Ry. Co. 156 Cal. 170, 103 Pac.

892; Levin v. Philadelphia & R. Co. 228 Pa. 266, 77 Atl. 456; Eisentrager v. G. N. Ry. Co. 178 Iowa 713, 160 N. W. 311, L. R. A. 1917B, 1245; Hunt v. C. B. & Q. R. Co. 181 Iowa 845, 165 N. W. 105, L. R. A. 1918B, 369.