## GUY ALDRICH AND ANOTHER v. VINCENT E. WILSON, JR., AND ANOTHER.

120 N. W. (2d) 849.

March 22, 1963—No. 38,637.

*K. L. Wallace,* for appellants.
*Nelson, Clemmensen & Reuther,* for respondents.

MURPHY, JUSTICE.

In this action the plaintiffs sought damages for trespass and relief by way of ejectment. The issues arise from a dispute between adjoining property owners as to the boundaries of certain lakeshore property, which the defendants claim the trial court erroneously resolved in the plaintiffs' favor. The defendants appeal from an order of the district court denying their motion for amended findings of fact and conclusions of law or for a new trial.

By their complaint the plaintiffs allege that they purchased a tract of land 50 feet in width fronting on Otter Tail Lake in Otter Tail County; and that the defendants, who are the owners of the adjoining tract to the west, constructed certain improvements, including a cottage and boathouse, which extend onto their property. By their answer and counterclaim the defendants allege ownership of the land upon which their improvements are situated and seek damages for wrongful trespass based on plaintiffs' cutting trees and shrubs and otherwise interfering with the defendants' enjoyment of their property. Before trial, the defendants amended their answer and alleged that if the description in their deed is not correct, the same is "erroneous and subject to reformation." In the concluding prayer for relief they ask "that the deed to defendants' property hereinbefore referred to be reformed, if necessary, to accurately describe the tract of land of which they are in possession and that they have judgment on their counterclaim * * *."

Title to both tracts of land derives through deeds from one Edward J. Simmer and Ilah M. Simmer, his wife. In 1950 the Simmers purchased "the East 900 feet" of Government Lot 3, Section 2, Township 133, Range 40, Otter Tail County, Minnesota. At this point it may be noted that Mr. Simmer clearly understood the description

and area of the property which he purchased. He testified, "I bought 900 feet and the 900 feet was contained between the east fence and the west fence," and "I bought a parcel of land in between the fences." The fences marked the east and west boundaries of the entire tract. State Highway No. 78 marked the south boundary, and the property was bounded on the north by Otter Tail Lake. A service road crosses the property, the eastern terminus of which is at a point 250 feet north of State Highway No. 78. It traverses the land in a northwesterly direction for some distance and then curves to the south and west, reaching the westerly limits of the tract at a point about 250 feet north of State Highway No. 78.

The findings of the trial court recite:

"2. That Edward J. Simmer and Ilah M. Simmer, his wife, having purchased the easterly 900 feet of said Government Lot 3 in 1950, intended to sell but unwilling to incur the expense of a survey and platting, having set wooden stakes at 50 foot intervals along the curving northerly boundary of the service road, conveyed as follows:

"(a) To Glen Hamilton by warranty deed dated September 11, 1952, recorded September 12, 1952, 'the West 300 feet of the East 400 feet, except the South 300 feet,' with perpetual right-of-way easement over the service road aforesaid and adjacent tracts, said easement right conditioned upon pro rata maintenance.

"(b) To Vincent E. Wilson, Jr., and Jeanne D. Wilson, his wife, by warranty deed dated September 29th, 1952, recorded September 29th, 1952, 'the West 50 feet of the East 450 feet, except the South 300 feet thereof,' with easement rights as above.

"3. That Glen Hamilton and Ruth Hamilton, his wife, having acquired the West 300 feet of the East 400 feet of said Government Lot [3], except the South 300 feet, with the perpetual easement over the service road, conveyed:

"(a) To Guy Aldrich and Emma Aldrich, his wife, by warranty deed dated February 8th, 1957, recorded April 1st, 1957, the West 50 feet of the East 400 feet thereof, and

"(b) To Walter G. Aldrich and Leone C. Aldrich, his wife, by warranty deed dated January 2nd, 1957, recorded April 1st,

1957, the West 100 feet of the East 350 feet, except the South 300 feet, all subject to said service road easements."

The trial court further found that Simmer had told the Wilsons "that certain wooden stakes represented their southeast and southwest corners," and the Wilsons, "not knowing whether their east and west boundaries ran at right angles to the road or otherwise, entered into possession in trespass, constructing with the help of their grantor a cabin rectangular in shape, which squares with the service road, a boat house and a drive to the lake shore."

It should be noted that Hamilton, the plaintiffs' immediate grantor, acquired title to the property in question on September 11, 1952, and that the defendants subsequently on September 29, 1952, acquired title to the contiguous tract to the west. It should also be pointed out that the record establishes that the plaintiffs acquired title from Hamilton on February 8, 1957, pursuant to a purchase agreement entered into July 5, 1956. The tract they purchased from Hamilton adjoins the tract acquired by the defendants. Subsequent to the deeds from Simmer to Hamilton and Wilson and prior to the commencement of this action, Simmer conveyed by separate deeds other parts of his property to Alexander Stewart, Alfred Karst, and Carl A. Dursch and Alice E. Dursch. The appellants' brief contains a plat prepared for illustrative purposes, which accompanies this opinion and explains the general location of the property. It is apparent from the description contained in the conveyances that Simmer's grantees received title to tracts, the southern boundary of which extended on a direct east and west line from a point 250 feet north of State Highway No. 78.

The defendants have attempted to establish by the record, however, that there was a mistake in the descriptions contained in the conveyances. Simmer testified that he considered dividing the property into 50-foot lots and that with the assistance of his wife and another person purported to be a surveyor, who is no longer living, he measured and marked the boundaries of such lots. He said they used a steel tape and, beginning at a point along the east line of Lot 3, 250 feet north of State Highway No. 78, measured 50-foot distances along the north border of the service road. Each 50-foot interval was marked by driv-

154

APPEAL PLAT

ing a stake in the ground. Simmer made the basic error of assuming that the service road ran directly east and west. It appears that the road varies as much as 17 degrees from east to west, and as a consequence the widths of the lots as staked out are unequal. It is obvious that, if the width of the lot is to be measured on a diagonal line, the size of it would be less than it would be if it were measured on a straight line running east and west. It is the defendants' claim that the correct boundaries of the tracts in question are established by the 50-foot markers claimed to have been set along the north border of the service road. On that basis the record would indicate that the boundary lines of each tract would be farther east than the descriptions in the deed would indicate. Moreover, if the defendants and their grantor, Simmer, are correct in their understanding of the description, the southern boundary of the lot would lie along the roadway and the lot would contain an area considerably less than that embraced in the description contained in the deed, which includes property south of the roadway.

The trial court determined that the descriptions of the property contained in the written deeds controlled the rights of the parties; that the plaintiffs were the owners in fee and entitled to the possession of the property described in the complaint; and that the defendants had trespassed thereon. The trial court determined that the cottage constructed by the defendants extended onto the plaintiffs' property a distance of from 14 feet 2 inches to 17 feet 6 inches and the boathouse encroached on it from 4 to 9 feet. The trial court determined that the defendants had trespassed and withheld possession of the property from the plaintiffs to their damage in the sum of $750 and ordered that the defendants be permitted within a specified time to remove the improvements from the plaintiffs' land.

The defendants argue that the evidence establishes a mistake in the deeds and that the court should have ordered reformation to correctly show, as they contend, a description of the property which would conform to boundaries established by the stakes set on the northern edge of the service road. The trial court was obviously satisfied that the plaintiffs' grantor, Hamilton, understood that he purchased property exactly as described in the deed given to him by the Simmers,

156

and that the Aldriches understood that they purchased from Hamilton a part of the property so described.

Although the principal issue presented here turns upon the question of whether the trial court should have granted reformation, an examination of the pleadings and record indicates that the case was presented and tried in the court below as an ordinary boundary dispute. Because of the pleadings and record, we find ourselves at a disadvantage in satisfactorily resolving the conflicting interests revealed by the record. Our decision must necessarily leave various questions unanswered. It is apparent from the record and the accompanying plat that there exists a separate conflict between each of the contiguous owners, and a general dispute between them and Mr. and Mrs. Dursch as to the ownership of property south of the road. It does not appear that any attempt was made by the defendants to join proper and necessary parties in interest who might be affected as a result of the litigation. Nor does the answer set forth with particularity the elements necessary to entitle the defendants to equitable relief. Had there been a pretrial conference, it would have been readily apparent that Simmer, the original grantor, as well as Dursch and others whose interests are in apparent conflict with the parties, should have been joined in this litigation. Minn. St. 559.23 and 559.24[1] comprehend that, in con-

---

[1]Minn. St. 559.23 provides: "An action may be brought by any person owning land or any interest therein against the owner, or persons interested in adjoining land, to have the boundary lines established; and when the boundary lines of two or more tracts depend upon any common point, line, or landmark, an action may be brought by the owner or any person interested in any of such tracts, against the owners or persons interested in the other tracts, to have all the boundary lines established. The court shall determine any adverse claims in respect to any portion of the land involved which it may be necessary to determine for a complete settlement of the boundary lines, and shall make such order respecting costs and disbursements as it shall deem just. The decree of the court shall be filed with the clerk, and a certified copy thereof shall be recorded in the office of the register of deeds or filed in the office of registrar of titles or both, if necessary; provided that such decree shall not be accepted for such recording or filing until it shall be presented to the county auditor who shall enter the same in the transfer record and note upon the instrument over his official signature the words 'ENTERED IN THE TRANSFER RECORD.' "

troversies between the adjoining landowners concerning both owner-ship and boundary lines, proceedings may be stayed in the interest of "full settlement and adjudication of all the questions involved," to permit other interested parties to be joined in the action. Hodson v. Hammer, 229 Minn. 389, 39 N. W. (2d) 601. But we must take the record as we find it and do the best we can to review the issues litigated in the court below.

From the discussion to follow, it will appear that the issues presented are much the same as those considered in the recent cases of Abramson v. Nelson, 263 Minn. 308, 116 N. W. (2d) 405, and Donaldson v. Kohner, 264 Minn. 230, 118 N. W. (2d) 446.

■ If we assume that the issue of reformation is before us, we must proceed upon the principle that before a court of equity will interfere to reform a written instrument, it must appear "substantially as alleged in the pleadings, that there was in fact a valid agreement sufficiently expressing in terms the real intention of the parties; that there was in fact a written contract which failed to express such true intention; and that this failure was due to mutual mistake, or to mistake of one side and fraud or inequitable conduct of the other." Fritz v. Fritz, 94 Minn. 264, 266, 102 N. W. 705, 706. In discussing this principle in Abramson v. Nelson, *supra,* we relied on the Fritz case

---

Section 559.24 provides: "Such actions shall be governed by the rules governing civil actions, except as herein otherwise provided, but every allegation in every answer shall be deemed in issue without further pleading. When in any such action it appears to the court that any owner, lienholder, or person interested in any of the tracts involved ought, for a full settlement and adjudication of all the questions involved, to be made a party, the court shall stay the proceedings and issue an order requiring such persons to come in and plead therein within 20 days after service of the order, which shall be served upon them in the same manner as a summons in a civil action. Any person so served who shall fail to file an answer within 20 days thereafter shall be in default. All pleadings or copies thereof shall be filed before such order is made. The court may also, in its discretion, in like manner, order the owners and persons interested in other tracts than those originally involved to come in and plead, in which case the order shall describe such additional tracts, and state that the purpose of the action is to establish the boundary lines thereof."

where this court pointed out that the right to reformation must be established by competent evidence, stating (94 Minn. 266, 102 N. W. 706):

"* * * (b) These facts must be established by competent evidence, which is consistent and not contradictory, clear and not equivocal, convincing and not doubtful. Mere preponderance of testimony is not sufficient. (c) Such relief will be extended to those only who have not by their own conduct (as laches, negligence, or otherwise) put themselves in such a position as to render it unjust to change the situation, especially when such change might injuriously affect the rights or status of innocent third parties. [Citing cases.]"

It is apparent from the record that the defendants' misunderstanding as to the description of their property was with their grantor, Simmer, who is not a party to this action. It is necessary for us only to observe that there is no evidence in the record to establish that the defendants have been prejudiced by the plaintiffs' inequitable conduct, fraud, or concealment of known facts. The essential facts necessary to establish reformation have been neither alleged nor proved.[2]

■ It is next contended by the defendants that the plaintiffs are estopped from asserting rights to the property in question because they were not purchasers in good faith. It is asserted that in purchasing the property they had knowledge of the fact that the defendants had made improvements upon a part of the property they proposed to buy from Hamilton. It is true there is evidence in the record that the plaintiffs did have some information that the defendants' improvements encroached a few feet over their property line. This information, however, came to the plaintiffs subsequent to July 5, 1956, the date they entered into their purchase agreement with Hamilton. Here again we have difficulty in seriously considering asserted error in the context of the record before us. The defendants were not induced or misled by any conduct of the plaintiffs or their grantor, Hamilton, in the construction of buildings upon property which the defendants did not

---

[2]Abramson v. Nelson, 263 Minn. 308, 116 N. W. (2d) 405; Karger v. Wangerin, 230 Minn. 110, 116, 40 N. W. (2d) 846, 850.

own. The defendants, like the trespassers in the Abramson case, obviously chose to construct their buildings in a place they considered desirable, without reliance on a survey. The plaintiffs cannot be blamed for the conduct of the defendants' grantor, Simmer, in helping them to locate the site of their improvements. Obviously the whole dispute here grows out of the failure of Simmer to take the trouble to have a survey of the property made. Since the defendants accepted Simmer's word for the location of their property line without taking the precaution of having a survey, they are not in a position to blame the plaintiffs for the difficulties in which they now find themselves. At any rate, the point may be disposed of by noting that the plaintiffs purchased the property from Hamilton, who was the owner in fee and who had acquired title thereto prior to the time Simmer had conveyed the adjoining tract to the defendants. The plaintiffs were entitled to the same protection in holding and enjoying the property as was their grantor. We said in Henschke v. Christian, 228 Minn. 142, 147, 36 N. W. (2d) 547, 550:

"A title free from outstanding claims and equities may be transferred in that condition. This is the underlying principle of the rule, applied in numerous cases, that a purchaser from a bona fide purchaser succeeds to his grantor's rights as a bona fide purchaser, regardless of whether he himself is one."

See, also, Helmer v. Shevlin-Mathieu Lbr. Co. 129 Minn. 25, 151 N. W. 421; Blew v. Ritz, 82 Minn. 530, 85 N. W. 548; Annotations, 44 A. L. R. 92, 79 A. L. R. (2d) 1199; 55 Am. Jur., Vendor and Purchaser, § 759.

■ The defendants make the further claim that the record establishes on the basis of actual surveys made that they are in fact the owners of the property in question. This claim is predicated upon evidence contained in the record to the effect that by calculations of distances from a point which purported to be a section corner in the original government survey, it might be established that the true eastern boundary of Government Lot 3 was 20 feet east of the fence line which marked its eastern boundary. There was evidence to the con-

trary which created a conflict on this point. In Erickson v. Turnquist, 247 Minn. 529, 533, 77 N. W. (2d) 740, 743, we observed:

"* * * It is a matter of common knowledge that surveys made by different surveyors seldom, if ever, completely agree and, that more than likely, the greater the number of surveys the greater the number of differences."

Relying on the foregoing authority, in Donaldson v. Kohner, 264 Minn. 230, 233, 118 N. W. (2d) 446, 448, we said:

"It would serve no useful purpose to explain in detail the method of survey used by the two surveyors. The difference in the line which they established obviously occurred as a result of the manner in which they proceeded to do their work. The court's determination of the crucial fact as to which survey was the correct one rests almost exclusively upon the credibility attached to the testimony of [the] witnesses."

We have repeatedly said that this court interferes with the findings of the trial court only where the evidence taken as a whole furnishes no substantial support for them or where it is manifestly and palpably contrary to the findings. Bjerketvedt v. Jacobson, 232 Minn. 152, 44 N. W. (2d) 775.

■ The trial court's conclusion on this issue is further substantiated by the record, from which it appears that the fence marking the eastern boundary of the property had been in existence for more than 30 years and had been recognized as the eastern boundary of the property by the owners and their respective predecessors during that time. In Neill v. Hake, 254 Minn. 110, 120, 93 N. W. (2d) 821, 828, we said:

"We have frequently held that a practical location for a boundary line between properties may be established if the evidence supports a finding that there has been a boundary line between such properties, mutually acquiesced in by the owners thereof for a sufficient length of time to bar entry under the statute of limitations. Gifford v. Vore, 245 Minn. 432, 72 N. W. (2d) 625; Fishman v. Nielsen, 237 Minn. 1, 53 N. W. (2d) 553; Phillips Petroleum Co. v. Selnes, 223 Minn. 518, 27 N. W. (2d) 553; Dittrich v. Ubl, 216 Minn. 396, 13 N. W.

(2d) 384; Dunkel v. Roth, 211 Minn. 194, 300 N. W. 610; Lieder-bach v. Pickett, 199 Minn. 554, 273 N. W. 77; Beardsley v. Crane, 52 Minn. 537, 54 N. W. 740; M. S. A. 559.23."

See, also, 37 Minn. L. Rev. 382; Engquist v. Wirtjes, 243 Minn. 502, 506, 68 N. W. (2d) 412, 416; Bjerketvedt v. Jacobson, *supra*.

We accordingly conclude that on the record as a whole and viewing the evidence in the light most favorable to the prevailing party, as we are required to do, the evidence reasonably tends to support the findings of the trial court as to the boundary locations. Laramy v. Ruschke, 46 Minn. 125, 48 N. W. 561; Loveridge v. Omodt, 38 Minn. 1, 35 N. W. 564.

Affirmed.

MR. JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.