## FRED AMATO v.
## HELEN ELIZABETH HARADEN AND ANOTHER.

159 N. W. (2d) 907.

June 14, 1968—No. 40,633.

*MacDonald & Munger* and *Harry L. Munger,* for appellants.
*Wangensteen & Bangs* and *Tom Wangensteen,* for respondent.

Heard before Knutson, C. J., and Murphy, Rogosheske, Sheran, and Peterson, JJ.

MURPHY, JUSTICE.

Defendants appeal from an order denying their alternative motion for amended findings or a new trial in an action to determine a boundary by practical location. The action was brought by Fred Amato against his neighbors, Helen Elizabeth and Mary Jane Haraden, to determine the boundary line between lots owned and occupied by them. The court found for plaintiff, and defendants assert error contending that the evidence was not sufficient to establish boundary by practical location nor to establish adverse possession.

The plaintiff and defendants are adjoining property owners in the city of Chisholm. Plaintiff Amato acquired title to Lot 15, Block "M", rearrangement of out lots "L" and "M", original plat of Chisholm, in 1950. It came to him by descent and purchase, the title originating with his father who acquired the property in 1919. The defendants Haraden acquired title through descent and purchase of the adjoining lot to the west, which was originally acquired by their father in 1916. Lot 15 appears to be in the shape of a trapezoid which has a frontage on the south on Oak Street of approximately 50 feet and narrows to a width of 8 feet at the alley. The part of the Haraden lot immediately to the west of Lot 15 was an abandoned railroad right-of-way. Sometime shortly after the senior Haraden acquired this property, the Amatos extended use of the property to the rear of their premises by occupying the easterly part of the abandoned railroad right-of-way. This extension of use by the Amatos obviously grew out of the unique shape and dimensions of the adjoining lots and seems to have resulted from the consent and agreement of the Haradens, the object being to permit the Amatos to have more backyard space and a larger frontage on the alley.

The record would indicate that the parties agreed to establish a line by fixing the west boundary of Lot 15 so that it would run parallel with the other platted lots facing Oak Street. Accordingly, the Haradens constructed a fence along the agreed line. As a result, a triangular tract east of the line was added to the north part of Lot 15 and a triangular tract to the west of the fence was added to the Haraden property on the south end of their lot facing Oak Street. The apex of the two triangles lies along the fence line, probably a few feet nearer Oak Street than the alley.

From the record it appears that when the fence was erected in 1926, George Haraden, defendants' brother, then a young man, was present when his father suggested to the senior Amato that the property line between the two lots be "squared off." According to his testimony, a bargain was struck between the Haradens and the Amatos whereby the parties exchanged triangular tracts at each end of their respective lots. It was "more or less an exchange" of property in order that the senior Haraden would have the "straight line he wanted." In time, the wooden fence deteriorated and was replaced by the Haradens in 1956 with a new steel fence.

While the defendants Haraden do not concede that there was acquiescence in the property line as established by the fence, nothing was ever done to assert possession until this action was started. After hearing the evidence, the trial court found:

"That during the period from 1926 to the present the plaintiff and his predecessors in title have used and occupied all of the property east of the fence, including Triangle 'A'; that the uses were a garden for 25 to 30 years, garage for many years, piling of wood along the fence, chicken coop, clothes line poles with blacktop thereunder, a cement sidewalk, a tool shed, garbage can stand; that plaintiff's property was enclosed on all sides by a fence, including the one in dispute, since 1926; that defendants' property has also been enclosed by a fence on all sides, including the one in dispute; that it was the desire and intention of all parties in 1926 that there be a 'straight line to the sidewalk and alley' between the respective properties, changing their shape from trapezoids to rectangles; that defendants and their predecessors in title have occupied and used from 1926 to the present all of the land west of the disputed fence, including Triangle 'B'; that defendants and their predecessors have had no access to the land east of the fence, and plaintiff and his predecessors have had no access to the land west of the fence, since 1926; that the respective use of said land by the parties and their predecessors has been with the full knowledge of the parties, with knowledge of the true line, and while both parties subjected themselves to expense in regard to the land which they would not have done had the line been in dispute.

\* \* \* \* \*

"That the boundary line separating the properties of the parties has been established by practical location 39 years prior to the commencement of this action, and that for all of that period it has been identified and determined by a wire fence, extending a distance of 125 feet in a generally north-south direction lying 30.38 feet west of and parallel to the east line of Lot 15, Block M rearrangement of out lots 'L' and 'M', original plat of Chisholm.

"That the plaintiff is the owner of the Easterly 30.38 feet of Lot 15, Block M, rearrangement of out lots 'L' and 'M', original plat of Chisholm, and the most northeasterly 30.38 feet, being Triangle A, of that part of the abandoned right-of-way of the Eastern Railroad Company lying east of and adjoining Lot 17, Block 35, in the village (now city) of Chisholm."

As we view the pleadings and record, the action was brought to determine a boundary line pursuant to Minn. St. 559.23.[1] It should be observed that defendants do not argue that principles of law relating

---

[1] Minn. St. 559.23 provides in part: "An action may be brought by any person owning land or any interest therein against the owner, or persons interested in adjoining land, to have the boundary lines established; and when the boundary lines of two or more tracts depend upon any common point, line, or landmark, an action may be brought by the owner or any person interested in any of such tracts, against the owners or persons interested in the other tracts, to have all the boundary lines established. The court shall determine any adverse claims in respect to any portion of the land involved which it may be necessary to determine for a complete settlement of the boundary lines, and shall make such order respecting costs and disbursements as it shall deem just."

The record would also indicate that the action was in the nature of one to determine adverse claims pursuant to Minn. St. 541.02, which provides: "No action for the recovery of real estate or the possession thereof shall be maintained unless it appears that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the premises in question within 15 years before the beginning of the action.

"Such limitation shall not be a bar to an action for the recovery of real estate assessed as tracts or parcels separate from other real estate, unless it appears that the party claiming title by adverse possession or his ancestor, predecessor, or grantor, or all of them together, shall have paid taxes on the

to practical boundary questions apply only where the boundary in dispute is uncertain and unknown or that where the line is definite and certain a parol agreement changing its location is within the statute of frauds. The thrust of the defense goes to the weight and sufficiency of the evidence to establish either a boundary by practical location or title by adverse possession.

It may be stated at the outset that boundary line agreements when fairly made are favored by the law. Where adjoining landowners occupy their respective premises up to a certain line which they mutually recognize and acquiesce in for a long period of time, usually the time prescribed by the statute of limitations, the general rule is that they are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one. The authorities upon which plaintiff relies are a long line of cases beginning with Beardsley v. Crane, 52 Minn. 537, 54 N. W. 740, and continuing down to the more recent cases of Fishman v. Nielsen, 237 Minn. 1, 53 N. W. (2d) 553; Bjerketvedt v. Jacobson, 232 Minn. 152, 44 N. W. (2d) 775; and Aldrich v. Wilson, 265 Minn. 150, 120 N. W. (2d) 849. The thrust of these authorities, as applied to the issues presented and the theory upon which the case was tried, is that practical location of a boundary line can be established in one of three ways only: (1) The location relied upon must have been acquiesced in for a sufficient length of time to bar right of entry under the statute of limitations; (2) the line must have been expressly agreed upon by the interested parties and afterwards acquiesced in; (3) the party whose rights are to be barred must, with knowledge of the true line, have silently looked on while the other party encroached thereon and subjected himself to expense which he would not have incurred had the line been in dispute.

---

real estate in question at least five consecutive years of the time during which he claims these lands to have been occupied adversely.

"The provisions of paragraph two shall not apply to actions relating to the boundary line of lands, which boundary lines are established by adverse possession, or to actions concerning lands included between the government or platted line and the line established by such adverse possession, or to lands not assessed for taxation."

404

We agree that there was ample evidence from the acts and conduct of the parties and their predecessors in interest over a period of at least 38 years to warrant the establishment of the boundary line determined by the trial court.

Affirmed.